Myron D. Rumeld*
mrumeld@proskauer.com
Neil V. Shah*
nshah@proskauer.com
Anastasia S. Gellman*
agellman@proskauer.com
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel.: 212.969.3000
Fax: 212.969.2900

Scott P. Cooper (SBN 96905)
scooper@proskauer.com
Jennifer L. Jones (SBN 284624)
jljones@proskauer.com
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Tel.: 310.557.2900
Fax: 310.557.2193

Jani K. Rachelson*
jrachelson@cwsny.com
Evan R. Hudson-Plush*
ehudson-plush@cwsny.com
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, NY 10022-4869
Tel.: 212.563.4100
Fax: 646.473.8254

*admitted pro hac vice*

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| EDWARD ASNER, *et al.*, | Case No. 2:20-cv-10914-CAS-JEM |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | |
| THE SAG-AFTRA HEALTH FUND, *et al.*, | Date: July 19, 2021 |
| Defendants. | Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Hon. Christina A. Snyder<br>Action Filed: December 1, 2020 |

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS .....................................................................2

LEGAL STANDARD FOR MOTION TO DISMISS ...........................8

ARGUMENT ..........................................................................................8

I.     PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS FAIL BECAUSE THEY ARE NOT DIRECTED AT FIDUCIARY CONDUCT ..................................................8

    A.     Merger and Plan Amendment are Plan Design/Settlor Decisions that are Not Constrained by ERISA's Fiduciary Duty Rules ..................................................8

       1.     The Decision to Merge the SAG and AFTRA Plans......11

       2.     The Decision to Amend the SAG-AFTRA Plan ...........13

    B.     Collective Bargaining Activities are Governed by Labor Law and Not by ERISA's Fiduciary Duty Rules...........15

II.     EVEN IF GOVERNED BY ERISA'S FIDUCIARY DUTY RULES, PLAINTIFFS' CLAIMS FAIL TO STATE A CLAIM FOR RELIEF....................................................17

    A.     Plaintiffs' Merger Claim Is Implausible ...................17

    B.     Plaintiffs' Failure-to-Disclose Claim Is Implausible................17

    C.     Plaintiffs Have No Viable Claims for Breach of Fiduciary Duty Premised on an Alleged Violation of Age Discrimination Laws .........................................18

       1.     Plaintiffs Cannot Use ERISA's Fiduciary Rules to Improperly Circumvent the Age Discrimination Laws..20

       2.     The Benefit Changes Do Not Violate Any Age Discrimination Laws.....................................23

-i-

III.    PLAINTIFFS FAIL TO STATE A CO-FIDUCIARY
        LIABILITY CLAIM ................................................................25

CONCLUSION ..........................................................................25

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ahlmeyer v. Nev. Sys. of Higher Educ.*,
　555 F.3d 1051 (9th Cir. 2009) ............................................................21

*Ameritech Benefit Plan Comm. v. Commc'n Workers of Am.*,
　220 F.3d 814 (7th Cir. 2000) ..............................................................21

*Bafford v. Northrop Grumman Corp.*,
　No. 20-55222, 2021 WL 1419055 (9th Cir. Apr. 15, 2021)................9

*Beck v. PACE Int'l Union*,
　551 U.S. 96 (2007)...............................................................................12

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007).............................................................................8

*Biggs v. N. Cent. United Tel. Co.*,
　No. C-2-95-913, 1997 WL 829173 (S.D. Ohio Oct. 15, 1997)........22

*Bins v. Exxon Co. U.S.A.*,
　220 F.3d 1042 (9th Cir. 2000) ............................................................10

*Carley v. Crest Pumping Technologies, L.L.C.*,
　890 F.3d 575 (5th Cir. 2018) ..............................................................13

*Carson v. Lake County*,
　865 F.3d 526 (7th Cir. 2017) ..............................................................23

*Collins v. Mfrs. Hanover Tr. Co.*,
　542 F. Supp. 663 (S.D.N.Y. 1982) ................................................21, 22

*Collins v. Teamsters Benefit Tr.*,
　No. 4:12-cv-02984 YGR, 2013 WL 12343709 (N.D. Cal. Dec. 27, 2013) .11, 14

*Conkright v. Frommert*,
　559 U.S. 506 (2010).............................................................................8

*Cunha v. Ward Foods, Inc.*,
　804 F.2d 1418 (9th Cir. 1986) ............................................................10

-iii-

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995)...............................................................9, 10, 14, 19

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ............................................................8, 17

*Elser v. I.A.M. National Pension Fund*,
    684 F.2d 648 (9th Cir. 1982) .................................................................14

*Ely v. Bd. of Trs. of Pace Indus. Union-Mgmt. Pension Fund*,
    No. 3:18-cv-00315-CWD, 2019 WL 438338 (D. Idaho Feb. 4, 2019)........11, 25

*Endries v. Bd. of Dirs. of the Motion Picture Indus. Health Plan*,
    No. 2:20-cv-06347-RGK-AGR, 2020 WL 6253320 (C.D. Cal. Oct. 7, 2020) .11,
    14

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)..................................................................................8

*Flanigan v. Gen. Elec. Co.*,
    242 F.3d 78 (2d Cir. 2001) .....................................................................12

*Fulghum v. Embarq Corp.*,
    785 F.3d 395 (10th Cir. 2015) ................................................................24

*Galante v. Fin. Indus. Regul. Auth., Inc.*,
    No. 16-5198, 2018 WL 2063748 (E.D. Pa. May 2, 2018) .................................21

*Godinez v. CBS Corp.*,
    81 F. App'x 949 (9th Cir. 2003) ............................................................14

*Hall v. Hill Refrigeration, Inc.*,
    36 F. Supp. 2d 1185 (C.D. Cal. 1999) .............................................15, 16

*Harris v. County of Orange*,
    902 F.3d 1061 (9th Cir. 2018) ................................................................23

*Hartline v. Sheet Metal Workers' Nat'l Pension Fund*,
    286 F.3d 598 (D.C. Cir. 2002).................................................................10

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)...................................................................9, 12, 13, 18

-iv-

*Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*,
   520 U.S. 510 (1997)................................................................19

*Janese v. Fay*,
   692 F.3d 221 (2d Cir. 2012) .................................................10

*Johnson v. Riverside Healthcare Sys. LP*,
   534 F.3d 1116 (9th Cir. 2008) .............................................24

*Ky. Ret. Sys. v. EEOC*,
   554 U.S. 135 (2008)..............................................................23

*Lea v. Republic Airlines, Inc.*,
   903 F.2d 624 (9th Cir. 1990) ...............................................15

*Lefevre v. Niagara Mohawk Power Corp.*,
   610 F. Supp. 2d 212 (N.D.N.Y. 2009)..................................24

*Lewis v. Pac. Mar. Ass'n*,
   No. C 06-04941 CRB, 2007 WL 2429554 (N.D. Cal. Aug. 24, 2007)..............24

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)...........................................9, 10, 13, 19

*Malia v. Gen. Elec. Co.*,
   23 F.3d 828 (3d Cir. 1994) ...................................................12

*Milwaukee Area Joint Apprenticeship Training Comm. for the Elec. Indus. v. Howell*,
   67 F.3d 1333 (7th Cir. 1995) ...............................................11

*Nance v. Maxwell Fed. Credit Union (MAX)*,
   186 F.3d 1338 (11th Cir. 1999) ...........................................21

*NLRB v. Amax Coal Co.*,
   453 U.S. 322 (1981).........................................................15, 16

*Nw. Airlines, Inc. v. Phillips*,
   675 F.3d 1126 (8th Cir. 2012) .............................................23

*Pallas v. Pacific Bell*,
   940 F.2d 1324 (9th Cir. 1991) .............................................14

-v-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ...........................................................12

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..........................................................................9

*Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*,
    944 F.2d 509 (9th Cir. 1991) ............................................................19

*Pope v. Cent. States Se. & Sw. Areas Health & Welfare Fund*,
    27 F.3d 211 (6th Cir. 1994) ..............................................................10

*Raya v. Barka*,
    No. 19-cv-2295-WQH-AHG, 2020 WL 3469374 (S.D. Cal. June 25, 2020)....25

*Reilly v. Charles M. Brewer, Ltd. Profit Sharing Plan & Tr.*,
    No. CIV 02-2218-PHX-BTM, 2006 WL 8447738 (D. Ariz. Feb. 7, 2006).......12

*Ronches v. Dickerson Emp. Benefits, Inc.*,
    No. CV 09-04279 MMM (PJWx), 2009 WL 10669571 (C.D. Cal. Oct. 30,
    2009) ..............................................................................................11, 13

*Saeyoung Vu v. Fashion Inst. of Design & Merch.*,
    No. CV 14-08822 SJO (Ex), 2015 WL 13545179 (C.D. Cal. Apr. 23, 2015) ...20

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983).....................................................................9, 20, 21

*United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*,
    756 F.2d 1262 (7th Cir. 1985) .....................................................15, 16

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996).................................................................8, 10, 22

*Walling v. Brady*,
    125 F.3d 114 (3d Cir. 1997) ..............................................................10

*Walsh v. Schlecht*,
    429 U.S. 401 (1977)..........................................................................18

*White v. Chevron Corp.*,
    752 F. App'x 453 (9th Cir. 2018) *cert. denied*, 139 S. Ct. 2646 (2019) ........8, 17

-vi-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

*Zombro v. Balt. City Police Dep't*,
  868 F.2d 1364 (4th Cir. 1989) ............................................................21

**STATUTES**

29 U.S.C. § 186(c)(5) ............................................................................3

Affordable Care Act (ACA) ...................................................................7

Age Discrimination in Employment Act (ADEA) ..........................7, 21, 22, 23, 24

Cal. Civ. Code § 51.5 (Unruh Civil Rights Act) ...............................7, 24

Employee Retirement Income Security Act (ERISA) .....................passim

ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B) .......................................10

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ...........................9, 10, 15

ERISA § 202(a)(2), 29 U.S.C. § 1052(a)(2) ........................................20

ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) ........................................13

ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) .............................14

ERISA § 405(a), 29 U.S.C. § 1105(a) ..................................................25

**OTHER AUTHORITIES**

29 C.F.R. § 1625.32(b) .........................................................................24

29 C.F.R. § 1625.32, Appendix Q&A1 ................................................19

119 CONG. REC. S30, 409-10 (1973) .................................................20

DOL Advisory Op. 89-29A ...................................................................12

DOL Field Assistance Bulletin 2002-2 ..........................................12, 13

Federal Rule of Civil Procedure 12(b)(6) ..........................................1, 3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

Defendants the SAG-AFTRA Health Fund (the "SAG-AFTRA Plan" or "Plan"), the former Board of Trustees of the Screen Actors Guild-Producers Health Plan (the "SAG Board of Trustees"), the Board of Trustees of the SAG-AFTRA Health Fund (the "SAG-AFTRA Board of Trustees"), and individually named trustees of the two Boards (the "SAG Trustees" and "SAG-AFTRA Trustees," collectively, the "Trustees") submit this memorandum of points and authorities in support of their motion to dismiss the First Amended Class Action Complaint (the "Complaint" or "FAC") (Dkt. 43) pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

A group of Plan participants, and a deceased participant's spouse, commenced this breach of fiduciary duty lawsuit under the Employee Retirement Income Security Act ("ERISA") against the trustees of the SAG-AFTRA Plan and the former trustees of the predecessor Screen Actors Guild-Producers Health Plan ("SAG Plan"). The lawsuit follows recent amendments to the Plan's benefit provisions that were adopted to address a projected funding shortfall. Plaintiffs claim the amendments discriminate against them on the basis of age. They also contend that the funding shortfall necessitating the amendments is due to: the allegedly imprudent decision by the former SAG Trustees in 2016 to merge the SAG Plan with the AFTRA Health Plan ("AFTRA Plan"); and, more recently, the SAG-AFTRA Trustees' failure to alert negotiators for the SAG-AFTRA Union (the "Union") and Union members of the Plan's financial condition in connection with the negotiation and ratification of collective bargaining agreements that additional employer contributions to the Plan were needed to avert the current shortfall. For multiple reasons, these claims should be dismissed.

First, the decisions concerning the Plan merger and amendments are not actionable as breaches of fiduciary duty under ERISA because they are settlor—not fiduciary—decisions. The Supreme Court has so held in a series of rulings, and all five circuit courts that have addressed the issue have applied the distinction between settlor

and fiduciary functions in the multiemployer plan context.  Whatever actions certain Trustees allegedly took—or failed to take—in connection with collective bargaining negotiations are likewise unassailable under ERISA because these actions were taken in the Trustees' capacities as union or management negotiators, not plan fiduciaries.

Second, the claim that the Plan merger disadvantaged former SAG Plan participants is implausible because it is premised on the mistaken assumption that the SAG Plan was financially superior to the AFTRA Plan prior to the merger.  The financial reports referenced in the Complaint demonstrate directly to the contrary.

Third, the claim that the amendments could have been averted by greater employer contributions to the Plan that would have been negotiated if the Trustees had disclosed the Plan's financial predicament during collective bargaining negotiations is implausible, among other reasons because: the lead negotiators were themselves Trustees, the employers did agree to substantially increase Plan contributions, and there is no reason to believe that the vast majority of Union members—most of whom receive no benefits from the Plan—would have wanted to divert wages and other forms of compensation to allow for additional Plan contributions.

Fourth, the age discrimination claims are not properly asserted under ERISA, which, unlike other statutes, is not designed to regulate age discrimination; and, in any event, there is no legal basis to challenge on age discrimination grounds the Plan's effort to save costs by requiring Medicare-eligible pensioners to look first to Medicare for their benefits, or by implementing other changes that distinguish among participants based on their Medicare-eligible, pension and/or retirement status, as opposed to age.

For these reasons, the Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

This Statement of Facts is based on the allegations in the Complaint, which are presumed true solely for purposes of this motion, and the documents attached to the Declaration of Myron D. Rumeld ("Rumeld Decl."), which may be considered on a

- 2 -

Rule 12(b)(6) motion under the judicial notice and/or "incorporation by reference" doctrines, as set forth in the accompanying Request for Judicial Notice.

### **The Plan**

The Plan is a multiemployer welfare fund that is jointly administered by trustees designated by the Union and by contributing industry employers.  Rumeld Decl., Ex. 1 at 8; *see also* 29 U.S.C. § 186(c)(5) (Taft-Hartley Act).  It is funded primarily through contributions by employers which are parties to collective bargaining agreements with the Union.  FAC ¶ 11.  The contributions are generally calculated as a percentage of a performer's covered earnings, which consist of both "sessional earnings" (meaning wages earned for services performed that day), and "residual earnings" (meaning compensation for prior work when it is exhibited at a later point in another medium or in reruns).  *See id.* ¶¶ 11, 86.

### **Prior Plan Merger**

The Plan resulted from the merger of the AFTRA Plan into the SAG Plan, pursuant to amendments of the plans' respective trust documents, effective January 1, 2017.  *Id.* ¶¶ 1, 7, 19; *see also* Rumeld Decl., Ex. 2 at 211-12 (describing transfer of assets from AFTRA Plan into merged Plan).  The merger occurred nearly five years after the merger of the SAG and AFTRA unions.[1]  FAC ¶¶ 5, 7.  Among other things, the plan merger created opportunities to obtain health benefits for performers who previously did not qualify for any coverage because their covered earnings were divided between the AFTRA and SAG Plans.  *See id.* ¶¶ 65, 68.

The Complaint insinuates that the merger was not in the interests of SAG Plan participants because their plan was financially stronger than the AFTRA Plan and had higher levels of employer contributions.  *See, e.g.*, *id.* ¶¶ 56, 72-73, 82-83.  The referenced data demonstrate to the contrary.  Just prior to the plan merger, on a per-

---

[1] "SAG" was the Screen Actors Guild.  AFTRA was the "American Federation of Television and Radio Artists."

- 3 -

participant basis, the AFTRA Plan had almost three times the assets of the SAG Plan, *see* Rumeld Decl., Ex. 2 at 118, 190, 211; Ex. 3 at 228, 256, 275,[2] and nearly twice the amount of employer contributions as the SAG Plan, *see id.* Ex. 2 at 198; Ex. 3 at 264. The AFTRA Plan also had nearly twice the amount of reserves as the SAG Plan had, measured by dividing each plan's net assets at the end of the year by its monthly benefit expense. *See id.* Ex. 2 at 190, 198, 211; Ex. 3 at 256, 264, 275.[3]  And, whereas the SAG Plan had an almost $11 million deficit in 2016, the AFTRA Plan had a $29 million surplus. *See id.* Ex. 2 at 198; Ex. 3 at 264.

### Benefits Provided by the Plan Before 2020

The Plan provides benefits to both active and retired employees. *See* Rumeld Decl., Ex. 4 at 294-96, 309-14.  An employee's entitlement to benefits generally depends on having the requisite level of covered earnings reported to the Plan. *See id.* at 294-98.  After the plan merger but before the 2020 Plan amendments (discussed below), employees could qualify for benefits under one of two levels of coverage, referred to as Plan I or Plan II.  For purposes of satisfying these eligibility thresholds, both sessional and residual earnings were considered. *See id.* at 293-95.

Medicare-eligible participants could continue to receive the same benefits available to pre-Medicare eligible participants if they met the earnings thresholds—provided that they had at least one dollar of sessional earnings reported to the Plan. *See id.* at 384.  If they did not have any sessional earnings, they could still qualify for coverage secondary to Medicare if they had the requisite residual earnings. *See id.*  In

---

[2] The 2016 Form 5500 filings for each plan (which are referenced in ¶ 72 of the Complaint) show that the SAG Plan had $242.3 million in net assets for 27,271 participants, *see* Rumeld Decl., Ex. 2 at 118, 190, 211, whereas the AFTRA Plan—not the SAG Plan, as the Complaint mistakenly states, *see* FAC ¶ 72—had $236.1 million in net assets for only 9,711 participants, *see* Rumeld Decl., Ex. 3 at 228, 256, 275.

[3] For example, the AFTRA Plan had 24 months of reserves, which is measured by dividing the plan's $236.1 million in net assets as of November 30, 2016 by its average monthly benefit payment for the year of $9.96 million ($119.5 million divided by 12). *See* Rumeld Decl. Ex. 3 at 256, 264, 275.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

addition, Senior Performers—those who were at least 65 years old and receiving a pension and, generally, had at least 20 service credits—could receive this secondary coverage even if they had no earnings of any kind.  *See id.* at 313.

### The Plan's Reservation of Rights to Change Benefits at Any Time

As is true for employee welfare plans generally, participants did not "vest" in the benefits provided by the Plan.  *See infra* p. 19.  Nor did they become entitled to benefits simply because contributions are made to the Plan with respect to their earnings.  *See infra* pp. 18-19.  To the contrary, the Plan specifically stated that future benefits "are not promised, vested or guaranteed," and it reserved the right to "reduce, modify or discontinue benefits or the qualification rules for benefits at any time," including with respect to retiree benefits.  Rumeld Decl., Ex. 4 at 287; *see also id.* at 411.

### 2020 Plan Amendments

In 2020, the SAG-AFTRA Trustees amended the Plan's benefits structure (the "2020 Plan Amendments"), effective January 1, 2021, and advised participants that the changes were necessitated by exponential health cost increases and the projected loss of contributions during the pandemic.  *See* Rumeld Decl., Ex. 5, at 428-30.[4]  Many changes applied to all participants, including: collapsing the two benefit levels into one; requiring spouses to take their own employer's health coverage as their primary coverage; raising participant premiums; combining the medical and hospital out-of-network deductibles; and eliminating the out-of-network out-of-pocket maximum.  *See id.* at 433-36, 445.

Changes were also made specifically for Medicare-eligible retirees—i.e., Medicare-eligible participants who were receiving a pension under the AFTRA

---

[4] The Complaint tries to suggest that the financial struggles that necessitated these changes could have been anticipated at the time of the merger.  *See, e.g.*, FAC ¶ 165 (alleging SAG Trustees ignored "looming peril" in approving merger).  But the financial evidence shows otherwise.  The Plan's 2017 financial statements (attached to its 2017 Form 5500 filing) show, for example, that the Plan generated a surplus of more than $17 million in 2017, the year *after* the merger.  *See* Rumeld Decl., Ex. 6 at 550.

Retirement Fund or SAG-Producers Pension Plan. *See* Rumeld Decl., Ex. 1 at 104. First, these retirees must now use Medicare as their primary coverage, unless they can satisfy the earnings threshold for primary coverage with sessional earnings. *See* Rumeld Decl., Ex. 1 at 17. Second, the Plan's secondary coverage for Medicare-eligible retirees has been replaced with individual insurance purchased on a Private Medicare Exchange operated by Via Benefits. For Senior Performers, a newly established Health Reimbursement Account Plan ("HRA Plan") will subsidize the cost of this insurance or other eligible costs, and will also provide catastrophic prescription drug reimbursement. *See id.* at 17, 28; Rumeld Decl., Ex. 5 at 437-41. Third, an October-September earnings period is now used to determine whether Medicare-eligible retirees have satisfied the earnings threshold for active coverage, in lieu of the period that previously applied. FAC ¶¶ 9, 89, 122; *see also* Rumeld Decl., Ex. 1 at 18.

### Claims Asserted

The Complaint asserts the following breach of fiduciary duty claims under ERISA:

**Count I** alleges that the former SAG Trustees acted imprudently and disloyally, and in breach of plan documents, by "considering, approving and implementing" the merger of the SAG and AFTRA health plans and the related amendments to the SAG Plan's trust agreement. FAC ¶ 165. The claim is premised on the assumption that a diligent pre-merger investigation would have revealed that the plan merger was not in the interests of the SAG Plan participants because the AFTRA Plan was in worse financial condition than the SAG Plan and, as such, the merger would negatively impact the SAG Plan participants' future health benefits. *See id.* ¶¶ 19, 27, 56, 72-73, 81-83, 165.

**Count II** alleges that the SAG-AFTRA Trustees acted imprudently and disloyally, and in breach of plan documents, *first*, by allegedly failing to disclose to Union negotiators and Union members, "in connection with the negotiation and approvals of [three] collective bargaining agreements" in 2019 and 2020, that more contributions were needed to sustain the existing health benefit structure, *id.* ¶ 173; *see also id.* ¶¶ 20, 105; and

- 6 -

*second*, by allegedly "approv[ing] and implement[ing] the [2020 Plan Amendments] that targeted and discriminated against participants age 65 and older based on their age" in violation of the Age Discrimination in Employment Act ("ADEA"), the Affordable Care Act ("ACA"), and California's Unruh Civil Rights Act ("UCRA"), *id.* ¶ 174; *see also id.* ¶ 21.

With respect to the first contention, Plaintiffs concede that the Union's "lead negotiators," as well as "many members of the management negotiating committee" were SAG-AFTRA Trustees. *Id.* ¶ 102. But Plaintiffs allege nevertheless that the "Union negotiating team could have directed and/or negotiated [for] much more money into" the Plan had they known about the Plan's financial condition; and Union members who voted to approve the contracts could have made more "informed decisions." *Id.* ¶ 106.

With respect to the second contention, Plaintiffs note that at least 13 participants have filed charges with the Equal Employment Opportunity Commission ("EEOC"), challenging the 2020 Plan Amendments as age discriminatory. *Id.* ¶¶ 21, 129. Plaintiffs nevertheless assume that they can assert age discrimination claims under ERISA because plan documents allegedly require the Plan to be "administer[ed]" in compliance with applicable laws. *Id.* ¶ 176. The age discrimination claims are specifically directed at: (i) the requirement that Medicare-eligible participants who have taken a pension qualify for primary coverage with sessional earnings only, *see id.* ¶¶ 9, 86, 119, 134; (ii) the change in the earnings period for these participants, which allegedly made it more difficult for them to qualify for coverage, *see id.* ¶ 122; and (iii) the substitution of Via Benefits coverage for the secondary coverage previously available to these participants, *see id.* ¶¶ 7, 85, 87, 118.

**Counts III and IV** assert claims, respectively, for co-fiduciary liability against: the SAG Trustees, arising from the claims alleged in Count I; and against the SAG-AFTRA Trustees, arising from the claims alleged in Count II. *See id.* ¶¶ 178-91.

## **LEGAL STANDARD FOR MOTION TO DISMISS**

A motion to dismiss is an "important mechanism for weeding out meritless claims" in ERISA cases. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). The early dismissal of claims that are not viable defrays unnecessary litigation expenses that might "unduly discourage employers from offering welfare benefit plans in the first place." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996); *see also Conkright v. Frommert*, 559 U.S. 506, 516-17 (2010). "Dismissal of a complaint is appropriate if it fails to 'state a claim to relief that is plausible on its face.'" *White v. Chevron Corp.*, 752 F. App'x 453, 454 (9th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 139 S. Ct. 2646 (2019). In determining plausibility, the Court is not "required to accept as true allegations that contradict . . . matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## **ARGUMENT**

### I. **PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS FAIL BECAUSE THEY ARE NOT DIRECTED AT FIDUCIARY CONDUCT**

Counts I and II of the Complaint should be dismissed because they allege breaches of fiduciary duty based on conduct not undertaken in a fiduciary capacity—namely, the decision to merge the two predecessor health plans (Count I), the decision to amend the Plan to change benefit eligibility requirements (Count II), and the alleged failure to disclose information in aid of collective bargaining negotiations (Count II).

#### A. **Merger and Plan Amendment are Plan Design/Settlor Decisions that are Not Constrained by ERISA's Fiduciary Duty Rules**

"In every case charging breach of ERISA fiduciary duty, . . . the threshold question is not whether the actions of some person . . . adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was

- 8 -

performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also Bafford v. Northrop Grumman Corp.*, No. 20-55222, 2021 WL 1419055, at *5 (9th Cir. Apr. 15, 2021) (dismissing claim against plan fiduciaries because alleged wrong did not "occur in connection with the performance of a fiduciary function"). It is well-settled that plan sponsors do not act as fiduciaries when making decisions that concern the structure or design of the plan, including—as challenged here—decisions to merge plans and to amend a plan's benefit provisions. Accordingly, these types of decisions cannot be challenged under ERISA's fiduciary liability provisions.

In a series of three cases in the late 1990s, the Supreme Court firmly established that plan sponsors do not act in a fiduciary capacity when they alter the structure of an employee benefit plan or the terms governing who is entitled to benefits. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("[A] [plan sponsor] does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan."); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890-91 (1996) (holding that "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries" and thus "may decide to amend an employee benefit plan without being subject to fiduciary review") (citation omitted); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [the plan sponsor], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan . . . .") (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983)).

As the Supreme Court noted, "[t]his rule is rooted in the text of ERISA's definition of fiduciary[,]" which makes a person a fiduciary only when performing defined management or administration functions that do not include plan design. *Lockheed*, 517 U.S. at 890 (citing ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A));[5] *see*

---

[5] "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

*also Varity*, 516 U.S. at 505 (noting that "amending or terminating a plan . . . cannot be an act of plan 'management' or 'administration'"); *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1047 (9th Cir. 2000) (noting "well established" rule that a plan sponsor "does not act in its fiduciary capacity as a plan administrator when it makes a business decision to amend a plan") (citing *Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1432-33 (9th Cir. 1986)).  When plan sponsors perform a plan design function, such as deciding to merge a plan, amend the terms of a plan, or terminate a plan altogether, "they do not act as fiduciaries, but are analogous to the settlors of a trust[.]" *Lockheed*, 517 U.S. at 890 (citations omitted).  And, in making these settlor decisions, plan sponsors are unconstrained by ERISA's fiduciary rules.  *See, e.g.*, *Curtiss-Wright Corp.*, 514 U.S. at 78 (noting that "plan sponsors are generally free under ERISA, *for any reason* at any time, to adopt, modify, or terminate welfare plans") (emphasis added).

Although the Supreme Court trilogy concerned single employer plans, every circuit appellate court considering the issue has applied the settlor-fiduciary distinction to decisions by trustees of multiemployer plans.[6]  *See Janese v. Fay*, 692 F.3d 221, 227 (2d Cir. 2012) ("[T]he Court's language [in the trilogy] is equally applicable to multi-employer plans."); *Hartline v. Sheet Metal Workers' Nat'l Pension Fund*, 286 F.3d 598, 599 (D.C. Cir. 2002) ("Nothing in the Supreme Court's [trilogy of] decisions or ERISA itself creates an exemption for multiemployer pension plans."); *Walling v. Brady*, 125 F.3d 114, 117 (3d Cir. 1997) ("*Lockheed* speaks of 'plan sponsors,' a term that applies to both single-employer sponsors and multi-employer sponsors under ERISA, and the opinion lacks any hint that single- and multi-employer plans should be analyzed differently."); *see also Pope v. Cent. States Se. & Sw. Areas Health &*

---

assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

[6] For single employer plans, ERISA defines "plan sponsor" as the employer, but in the case of multiemployer plans, the "plan sponsor" is "the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan."  ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

*Welfare Fund*, 27 F.3d 211, 213-14 (6th Cir. 1994) (applying settlor/fiduciary distinction to multiemployer plan before trilogy); *Milwaukee Area Joint Apprenticeship Training Comm. for the Elec. Indus. v. Howell*, 67 F.3d 1333, 1338 (7th Cir. 1995) (same).  The Ninth Circuit Court of Appeals has not yet considered the issue, but this Court has stated its agreement that multiemployer plan trustees are not subject to ERISA's fiduciary rules when engaged in plan design/settlor functions.  *See Endries v. Bd. of Dirs. of the Motion Picture Indus. Health Plan*, No. 2:20-cv-06347-RGK-AGR, 2020 WL 6253320, at *3-4 (C.D. Cal. Oct. 7, 2020) (dismissing ERISA fiduciary breach claim against board of directors of multiemployer welfare benefit plan because plan amendment is a settlor/non-fiduciary function and the "principle applies equally in the context of an amendment to a multiemployer plan"); *Ronches v. Dickerson Emp. Benefits, Inc.*, No. CV 09-04279 MMM (PJWx), 2009 WL 10669571, at *11-14, 12 n.81 (C.D. Cal. Oct. 30, 2009) (dismissing ERISA fiduciary breach claim against trustee of multiemployer welfare benefit plan based on the settlor/non-fiduciary decision to provide certain health benefits and concluding that *Curtiss-Wright* applies to multiemployer plans).  Other district courts in this Circuit have likewise dismissed fiduciary breach claims against multiemployer plan sponsors challenging settlor acts. *See, e.g.*, *Collins v. Teamsters Benefit Tr.*, No. 4:12-cv-02984 YGR, 2013 WL 12343709, at *10-11 (N.D. Cal. Dec. 27, 2013); *Ely v. Bd. of Trs. of Pace Indus. Union-Mgmt. Pension Fund*, No. 3:18-cv-00315-CWD, 2019 WL 438338, at *7 (D. Idaho Feb. 4, 2019).

As discussed below, the distinction between settlor and fiduciary functions precludes Plaintiffs' claims challenging the plan merger and 2020 Plan Amendments.

### 1.    The Decision to Merge the SAG and AFTRA Plans

Plaintiffs have no viable claim for fiduciary breach premised on the SAG Trustees' decision to merge the two health plans (Count I).  That decision concerns the structure of the plan and thus falls squarely within the realm of settlor functions.  *See,*

- 11 -

*e.g.*, *Hughes Aircraft*, 525 U.S. at 444 ("ERISA's fiduciary duty requirement simply is not implicated where [the plan sponsor], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan . . . ."); *Beck v. PACE Int'l Union*, 551 U.S. 96, 101-02 (2007) ("[B]ecause decision[s] regarding the form or structure of a plan are generally settlor functions, . . . the decision to merge plans is normally [a] plan sponsor decisio[n] as well.") (internal quotation marks and citations omitted); *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1069, 1076 (9th Cir. 2009) (recognizing that "decision to spin a plan off" and transfer plan assets into a new plan is "not a fiduciary act" even if plan sponsor knew that participants were being transferred into a plan with "inadequate funding"); *Malia v. Gen. Elec. Co.*, 23 F.3d 828, 833 (3d Cir. 1994) (holding that decision "to merge two pension plans do[es] not invoke the fiduciary duty provisions of ERISA"); *Reilly v. Charles M. Brewer, Ltd. Profit Sharing Plan & Tr.*, No. CIV 02-2218-PHX-BTM, 2006 WL 8447738, at *12 (D. Ariz. Feb. 7, 2006) (holding that decision to merge pension plan into profit-sharing plan is settlor/non-fiduciary); *see also Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 87-88 (2d Cir. 2001) (collecting cases and holding that decision to transfer assets from one pension plan to another is settlor/non-fiduciary).[7]

In an attempt to attach fiduciary responsibilities to the merger decision, the Complaint insinuates that the SAG Plan's trust agreement subjected the SAG Trustees to fiduciary duties with respect to this decision, *see* FAC ¶¶ 27, 59, 80, and alleges that, at the time of the 2012 SAG-AFTRA merger, the SAG union assured its membership that the SAG Trustees would carefully consider whether a future merger of the health plans was in the interests of the participants before making any decision on it, *see id.* ¶¶ 4, 27, 57-67.  Neither argument holds water.  The referenced trust provision merely

---

[7] The Complaint purports to rely on a DOL Advisory Opinion issued in 1989 to suggest that ERISA fiduciary duties apply to the merger, *see* FAC ¶¶ 57, 66 (citing DOL Advisory Op. 89-29A).  This opinion has been superseded by the Supreme Court trilogy and the Circuit Court precedent cited above, as the DOL recognized in the Field Assistance Bulletin that Plaintiffs also cite in the Complaint, *see* FAC ¶ 65.

parrots ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) and states that fiduciary duties apply when the SAG Trustees are "discharg[ing]" their fiduciary duties; it does not purport to apply fiduciary duties to the discharge of settlor/non-fiduciary functions.[8] FAC ¶ 59.  Similarly, none of the alleged representations made by or on behalf of the SAG union (not the Plan) regarding the manner in which a plan merger decision would be made converts that decision from a settlor function to a fiduciary function.[9]

In short, while the SAG Trustees would vigorously defend the assertion that they did not carefully consider the implications of the merger for all impacted participants, their deliberations are not subject to scrutiny under ERISA's fiduciary duty rules.

### 2. The Decision to Amend the SAG-AFTRA Plan

Plaintiffs likewise have no viable claim for fiduciary breach based on the decision to adopt the 2020 Plan Amendments and alter benefit eligibility requirements (Count II).  This claim is "directly foreclosed by [*Lockheed*'s] holding that, without exception, '[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries.'"  *Hughes Aircraft*, 525 U.S. at 445 (quoting *Lockheed*, 517 U.S. at 890).

---

[8] For the same reason, the DOL Field Assistance Bulletin that Plaintiffs cite, *see* FAC ¶ 65, does not support their position.  The Bulletin—whose weight is limited to its power to persuade, *see Carley v. Crest Pumping Technologies, L.L.C.*, 890 F.3d 575, 581 (5th Cir. 2018)—opined that settlor activities may be governed by ERISA fiduciary duties if the plan documents expressly "contemplate that the board of trustees of a multi-employer plan will act as fiduciaries *in carrying out activities which would otherwise be settlor in nature.*"  DOL Field Assistance Bulletin 2002-2 (emphasis added).  In any event, this Court has expressed skepticism as to whether the Bulletin should be followed in the face of clear Supreme Court precedent to the contrary and noted that no "court has relied upon or implemented the [DOL's] suggestion that a plan can provide when and if its trustees will be deemed to be fiduciaries."  *Ronches*, 2009 WL 10669571, at *14, 14 n.82.

[9] The Complaint alleges that "SAG *and several defendants*" made promises about the future plan merger in 2012 during litigation over the union merger.  FAC ¶ 27 (emphasis added).  But almost all of the referenced statements were made by SAG union representatives in connection with a lawsuit against SAG.  *See id.* ¶ 57 (citing SAG union brief); ¶¶ 64-65 (citing attorney hired by SAG union); ¶ 67 (citing actuary hired by SAG union).  The only statements made by defendants here were by John McGuire, who said that the SAG Plan is governed in accordance with its trust agreement, *see id.* ¶ 58, and by Duncan Crabtree-Ireland, who referred—without comment—to the 1989 DOL Advisory Opinion that has since been superseded.  *See id.* ¶ 66; *supra* n.7.

A plan amendment that changes "who is entitled to receive Plan benefits" is precisely the type of settlor action that was contemplated by the Supreme Court trilogy. *Id.* at 444; *see also Curtiss-Wright*, 514 U.S. at 78 (that the plan sponsor "amended its plan to deprive respondents of health benefits is not a cognizable complaint under ERISA").

Following these rulings, this Court recently dismissed an ERISA breach of fiduciary duty claim challenging a multiemployer plan amendment that changed benefit eligibility requirements for healthcare coverage. *See Endries*, 2020 WL 6253320, at *1-4. Like the Plaintiffs here, the *Endries* plaintiffs complained that the changes "granted coverage to some participants while failing to extend it to other similarly situated individuals" and thus treated "one group of plan participants differently from another." *Id.* at *1, *3. The Court dismissed the complaint, holding that the decision "to amend the terms of the Plan . . . does not implicate fiduciary review." *Id.* at *3-4.[10] Likewise, in *Collins*, the Northern District of California dismissed an ERISA fiduciary breach claim challenging a multiemployer plan amendment requiring participants to pay monthly charges for post-retirement healthcare coverage because such changes are a "settlor/non-fiduciary" function. *See* 2013 WL 12343709, at *10-11.

As is true for their claim challenging the plan merger, Plaintiffs cannot avoid dismissal of their claim concerning the 2020 Plan Amendments by framing it as a violation of plan documents. ERISA § 404(a)(1)(D) only purports to require plan *fiduciaries* to act in accordance with plan documents and, for the reasons stated, the SAG-AFTRA Trustees were not acting as fiduciaries in amending the Plan. *See* 29 U.S.C. § 1104(a)(1)(D) ("[A] *fiduciary* shall discharge his duties with respect to a plan

---

[10] In its ruling, this Court rejected the continued viability of a Ninth Circuit case, *Elser v. I.A.M. National Pension Fund*, 684 F.2d 648 (9th Cir. 1982), which held that a plan amendment's discrimination among participants may constitute a fiduciary breach. *See Endries*, 2020 WL 6253320, at *4. The same conclusion holds for another Ninth Circuit case, *Pallas v. Pacific Bell*, 940 F.2d 1324 (9th Cir. 1991), which relied on *Elser* to permit a fiduciary breach claim challenging an allegedly discriminatory plan amendment. Since the Supreme Court trilogy, allegations that plan amendments discriminate among participants have been dismissed on settlor/non-fiduciary grounds. *See Godinez v. CBS Corp.*, 81 F. App'x 949, 949-50 (9th Cir. 2003).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

. . . in accordance with the documents and instruments governing the plan . . . .") (emphasis added).  In any event, the Complaint's reliance on the SAG Plan's trust agreement, *see* FAC ¶¶ 109-11, 176, is misplaced because that document ceased to apply once the plans merged years earlier.  And, the allegation that the Plan's trust agreement required the Plan be "managed and administered" or "operate[d]" in accordance with applicable law, *see id.* ¶¶ 21, 112, 115, 129, is of no moment because any reference to plan management, administration, and operation clearly applies to fiduciary conduct, not settlor acts.  *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

## B.   Collective Bargaining Activities are Governed by Labor Law and Not by ERISA's Fiduciary Duty Rules

For similar reasons, the Court should dismiss Plaintiffs' claim that the SAG-AFTRA union and management Trustees breached their fiduciary duties by failing to disclose the "funding needed to sustain the health benefit structure" to: (1) non-Trustee members of the Union negotiating team during the negotiation of three collective bargaining agreements entered into in 2019 and 2020; and (2) Union members voting to ratify these agreements.  *See, e.g.*, FAC ¶¶ 98, 105-106, 173.  As is true for the conduct relating to the merger and 2020 Plan Amendments, these actions were not undertaken in a fiduciary capacity and, thus, are not constrained by ERISA's fiduciary duty rules.

The "[Supreme] Court long ago made clear that collective bargaining activities . . . do not constitute plan management by the trustee of an ERISA welfare plan" and, therefore, are not considered fiduciary acts.  *Hall v. Hill Refrigeration, Inc.*, 36 F. Supp. 2d 1185, 1189 (C.D. Cal. 1999) (citing *NLRB v. Amax Coal Co.*, 453 U.S. 322, 334 (1981)); *see also United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1268 (7th Cir. 1985) ("The tasks of [plan] administration do not extend to negotiating the terms of the governing collective bargaining agreement.") (citing *Amax Coal*, 453 U.S. at 336-38); *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 631 (9th Cir.

- 15 -

1990) (holding that neither the employer nor the union "performed fiduciary functions during negotiations [to terminate a pension plan] that would expose them to liability for breach of [fiduciary] duty") (citing *United Indep. Flight Officers*, 756 F.2d at 1267).

     In *Hall*, this Court held that a union and employer trustee of two multiemployer benefit plans "were not acting as trustees and were not subject to ERISA's fiduciary requirements" when they negotiated and executed agreements that reduced contributions without submitting the agreements for union ratification. *See* 36 F. Supp. 2d at 1187-90. The Court explained that, "even if an employer or union representative also serves as an ERISA trustee, his obligations as representative must be viewed separately from those imposed on him as a trustee." *Id.* at 1189 (citing *Amax Coal*, 453 U.S. at 337 n.21). In the "administrative realm," the trustee is bound by "fiduciary duties to enforce the plan as it exists for the sole benefit of the beneficiaries." *Id.* (citing *Amax Coal*, 453 U.S. at 336-37). But, in the collective bargaining realm, where "representatives negotiate on behalf of one side or the other to define the scope and terms of the plan[,]" the "acts of the union or employer representative . . . are governed not by fiduciary duties under ERISA, but by the good faith bargaining rules of labor law." *Id.* The Supreme Court has also noted that ERISA fiduciary duties are "wholly inconsistent" with the demands of negotiation and with the collective bargaining process regulated by the National Labor Relations Act. *Amax Coal*, 453 U.S. at 336, 337 n.21; *see also United Indep. Flight Officers*, 756 F.2d at 1268 (same).

     Here, as in *Hall*, the SAG-AFTRA Trustees "were not acting as trustees and were not subject to ERISA's fiduciary requirements" when they negotiated the contribution rates in the three collective bargaining agreements at issue, or when they communicated with other negotiators or Union members in connection therewith. 36 F. Supp. 2d at 1188. Accordingly, any fiduciary breach claim in Count II premised on the failure to disclose information about the Plan in the context of collective bargaining negotiations fails to state a claim and should be dismissed.

- 16 -

## II.   **EVEN IF GOVERNED BY ERISA'S FIDUCIARY DUTY RULES, PLAINTIFFS' CLAIMS FAIL TO STATE A CLAIM FOR RELIEF**

Although the Court need not consider the merits of Plaintiffs' fiduciary breach claims, for the reasons stated above, each is dismissible for independent reasons.

### A.   **Plaintiffs' Merger Claim Is Implausible**

Plaintiffs' claim that the SAG Trustees' decision to merge the SAG and AFTRA Plans was imprudent is premised on the assumption that, immediately before the merger, the SAG Plan was a "rich plan" with higher contribution levels, and the AFTRA plan was "relatively poor," with lower contribution levels.  FAC ¶ 56; *see also id.* 72-73, 82-83.  This assumption is based on a misreading of the financial information contained in the Form 5500 filings cited in the Complaint, *see id.* ¶ 72, and a study dated *14 years before* the Plan merger, *see id.* ¶ 56 (referring to a 2003 Mercer Report). The contemporaneous data available from the cited Form 5500 filings directly contradict this assumption and demonstrate that the AFTRA Plan was actually in better financial shape than the SAG Plan just prior to the merger.  *See supra* pp. 3-4.  When Plaintiffs' demonstrably false and "unwarranted deductions of fact" concerning the plans' pre-merger conditions are properly disregarded by the Court, *see, e.g.*, *Daniels-Hall*, 629 F.3d at 998, Plaintiffs fail to state a plausible claim regarding the merger in Count I.

### B.   **Plaintiffs' Failure-to-Disclose Claim Is Implausible**

Even if ERISA required the SAG-AFTRA Trustees to disclose information about the financial condition of the Plan during collective bargaining negotiations (which is not true, for the reasons stated), the Complaint's allegations that the withheld information resulted in losses to the Plan are so implausible that they would fail to state a claim for fiduciary breach.  *See, e.g.*, *White*, 752 F. App'x at 454 (noting that a plausible complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Because the Complaint acknowledges that some of the SAG-AFTRA Trustees who possessed information about the Plan's

financial condition were the "lead negotiators" for the Union, FAC ¶ 102, it is simply not reasonable to infer that any failure to obtain contracts with greater contributions from the employers was attributable to a lack of awareness of this information.  It is also unreasonable to believe that, with greater awareness of the Plan's financial condition, the Union could have extracted greater contributions from television/theatrical employers who were already agreeing to an increase of "up to $54 million" in contributions—an amount that the Union characterized as "transformative."  *Id.* ¶ 103.[11]  There likewise is no plausible reason to believe that the Union members would have voted to divert a greater portion of their wages and benefits package to Plan contributions, since only a fraction of them receive benefits from the Plan.  *Compare* FAC ¶ 13 (Plan had 33,000 participants), *with* SAG-AFTRA, About webpage, https://www.sagaftra.org/about (last visited April 17, 2021) (Union has approximately 160,000 members).

In short, Plaintiffs have no plausible basis to claim that the Plan has been deprived of contributions on account of any failure to apprise Union negotiators or Union members of the Plan's financial condition.

## C. Plaintiffs Have No Viable Claims for Breach of Fiduciary Duty Premised on an Alleged Violation of Age Discrimination Laws

Plaintiffs wrongly insinuate that the 2020 Plan Amendments were improper because they reduced or eliminated benefits for participants whose earnings generated contributions to the Plan.  *See, e.g.*, FAC ¶ 3.  The fact that an employee's earnings generate contributions to a plan does not create a right to benefits.  *See, e.g.*, *Walsh v. Schlecht*, 429 U.S. 401, 410-11 (1977) (finding that fund could accept contributions from employer for work of employees of non-signatory subcontractor who will never receive benefits from the fund); *Hughes Aircraft*, 525 U.S. at 431 (holding that defined benefit plan participants have "no entitlement to share in a plan's surplus—even if it is

---

[11] The allegations are even more implausible insofar as they relate to the Commercials contract and Netflix contract, as those negotiations occurred in early to mid-2019, well before the dire Plan deficit projections.  *See* FAC ¶¶ 99-100.

partially attributable to the investment growth of their contributions" and used to fund benefits for participants who never contributed to the plan); *Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 512, 517 (9th Cir. 1991) (holding that multiemployer fund's rules in which only 3% of workers with respect to whom employers contributed to the fund qualified for benefits were not unlawful).

Even when an employee has obtained benefits on the strength of her earnings, absent a contractual promise to the contrary, the Plan retains the legal right to change or eliminate these benefits at any time. *See, e.g.*, *Curtiss-Wright*, 514 U.S. at 78; *Lockheed*, 517 U.S. at 890; *Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 514-15 (1997); *see also* 29 C.F.R. § 1625.32, App. Q&A1 ("employers are under no legal obligation to offer retiree health benefits"). Here, the Plan in fact specifically reserved the right to amend or eliminate health benefits altogether; and it also reserved the right to make changes in eligibility requirements, even once eligibility was attained. *See supra* p. 5; Rumeld Decl., Ex. 4 at 287, 411. Simply put, Plaintiffs did not "vest" in any right to alleged "lifetime Union health coverage," FAC ¶ 7, or any other prescribed level of benefits, retiree or otherwise, regardless of their earnings or the contributions made to the Plan with respect to these earnings.

Apparently recognizing that this argument is a legal "dead end," Plaintiffs revert to challenging the benefit eligibility changes as fiduciary breaches under ERISA on the ground that they are age discriminatory. Even putting aside the fact that the challenged conduct is not fiduciary in nature, this effort fails because: (i) ERISA cannot be used to circumvent the age discrimination laws; and (ii) the 2020 Plan Amendments do not violate the age discrimination laws since they do not distinguish among participants based on age, but rather based on retiree and pension status.

1.   *Plaintiffs Cannot Use ERISA's Fiduciary Rules to Improperly*
*Circumvent the Age Discrimination Laws*

The Complaint purports to assert claims for breaches of fiduciary duty that are premised exclusively on the contention that the 2020 Plan Amendments breached age discrimination laws. ERISA was not intended to redress claims for employment discrimination, and it certainly was not intended to serve as a vehicle for avoiding jurisdictional and procedural rules embodied in the age discrimination laws. Accordingly, there is no basis for these claims to proceed under ERISA.

As the Supreme Court has noted, in the context of welfare benefit plans, "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." *Shaw*, 463 U.S. at 91. In fact, the legislative history of ERISA shows that the Senate expressly considered and rejected the inclusion of nondiscrimination provisions because it was desirable to maintain "centralized administration" of employment discrimination claims via the EEOC. *Id.* at 104 (citing 119 CONG. REC. S30, 409-10 (1973)). Accordingly, there is no violation of ERISA when a welfare benefit plan distinguishes between groups of employees and excludes some from participating as a matter of plan design. *See id.* at 91; *see also, e.g.*, *Saeyoung Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (Ex), 2015 WL 13545179, at *4 (C.D. Cal. Apr. 23, 2015) (noting employers may provide benefits for some employees but not for others as a matter of plan design) (citations omitted).[12] Whether such a distinction violates federal discrimination laws is a separate question to be handled in the manner Congress intended under those other statutes.

---

[12] By contrast, in the context of pension plans, plan sponsors may *not* "exclude from participation (on the basis of age) employees who have attained a specifi[c] age." ERISA § 202(a)(2), 29 U.S.C. § 1052(a)(2). This shows that, where Congress wanted to prohibit age discrimination under ERISA, it expressly did so.

Appellate courts in the Ninth Circuit and elsewhere have accordingly rejected "backdoor" attempts to assert ADEA violations using other causes of action. *See, e.g.*, *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1056-57 (9th Cir. 2009) (rejecting possibility of constitutional rights claim under 42 U.S.C. § 1983 premised on age discrimination in part because it would allow plaintiffs to "avoid" ADEA's "specific provisions") (quoting *Zombro v. Balt. City Police Dep't*, 868 F.2d 1364, 1366 (4th Cir. 1989)); *Nance v. Maxwell Fed. Credit Union (MAX)*, 186 F.3d 1338, 1342-43 (11th Cir. 1999) (holding "that the enforcement of rights secured through the ADEA must be pursued in the manner specified in the ADEA, not through alternative state-law mechanisms," and that plaintiffs cannot make an "end run" around the ADEA's "complex statutory scheme" as that would "surely frustrate congressional intent").

Other courts have similarly dismissed ERISA claims premised on alleged violations of the ADEA and/or other anti-discrimination laws. In so doing, the courts have reasoned that ERISA is not intended to redress discrimination and/or that the plaintiffs' claims can be adequately redressed under other statutes as Congress intended. *See Ameritech Benefit Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 825 (7th Cir. 2000) (rejecting ERISA fiduciary breach claim premised on violation of Title VII and noting that "there may be a problem with shoehorning a [sex] discrimination claim into the ERISA notion of fiduciary duty") (citing *Shaw*, 463 U.S. at 91, 105-06); *Galante v. Fin. Indus. Regul. Auth., Inc.*, No. 16-5198, 2018 WL 2063748, at *10 (E.D. Pa. May 2, 2018) (rejecting ERISA fiduciary breach claim premised on violation of ADEA because, even assuming the ADEA was violated, ERISA "does not itself proscribe discrimination") (quoting *Shaw*, 463 U.S. at 91); *Collins v. Mfrs. Hanover Tr. Co.*, 542 F. Supp. 663, 671-72 (S.D.N.Y. 1982) (dismissing ERISA benefits claim premised on contention that plaintiff's salary was "unnaturally low" due to age and sex discrimination because ERISA was not intended to redress such discrimination, and the ADEA and other federal discrimination statutes

- 21 -

will provide a "comprehensive" remedy); *Biggs v. N. Cent. United Tel. Co.*, No. C-2-95-913, 1997 WL 829173, at *4 (S.D. Ohio Oct. 15, 1997) (dismissing ERISA claim premised on sex discrimination that was "more recognizable as a Title VII or Equal Pay Act claim" and noting that "[p]iling ERISA claims in with Title VII, EPA, PDA and the like is unnecessary, as a successful claim under the anti-discrimination statutes will provide for total recovery").  As the *Biggs* court noted, "ERISA was not passed to provide plaintiff's counsel with one more bite at the apple" if, "for whatever reason, [they] cannot recover under the anti-discrimination statutes."  1997 WL 829173, at *4.

    In this case, Plaintiffs' resort to ERISA's fiduciary rules to challenge the 2020 Plan Amendments on grounds of age discrimination is not only inappropriate because it targets non-fiduciary conduct, but is also a thinly veiled attempt to evade the requirements of the ADEA.  The ADEA already provides a vehicle for challenging discrimination in connection with the provision of benefits, through a filing with the EEOC.  Indeed, as Plaintiffs acknowledge, several charges of discrimination have been filed with the EEOC.  *See* FAC ¶¶ 21, 129.  To permit Plaintiffs to assert age discrimination claims in the guise of fiduciary breach claims, and thereby circumvent the procedural prerequisites for filing an age discrimination claim, would be an improper use of the court's equitable powers.  *See Collins*, 542 F. Supp. at 671-72 (holding that it would be "inappropriate for the Court to exercise its equity jurisdiction" under circumstances where there was "no authority for the proposition that ERISA was intended to reach conduct of the sort described in the complaint" and where "there are other available, comprehensive remedies" for discrimination); *see also Varity*, 516 U.S. at 515 ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'").  It would also unfairly expose the Trustees to claims against them personally, when they would face no personal exposure to an ADEA claim.  Finally, the pursuit of age discrimination claims under ERISA could

- 22 -

create the risk of inconsistent adjudications, should the EEOC or other Plan participants eventually file a federal court lawsuit under the ADEA.

Accordingly, Plaintiffs should not be permitted to proceed with ERISA claims that are premised on alleged violations of age discrimination laws.

2. *The Benefit Changes Do Not Violate Any Age Discrimination Laws*

Plaintiffs' age discrimination assertions target three aspects of the Plan amendments: first, the requirement that Medicare-eligible pensioners use Medicare as their primary source of coverage unless they have sufficient sessional earnings to satisfy the earnings threshold, *see* FAC ¶¶ 9, 86, 119, 134; second, the change in the base earnings period used to determine if these pensioners qualify for active coverage, *see id.* ¶ 122; and third, the replacement of secondary coverage for Medicare-eligible pensioners with coverage through Via Benefits, *see id.* ¶¶ 7, 85, 87, 118.  None of these provisions violates the cited age discrimination laws.

As the Supreme Court recognizes, the age discrimination laws do not prohibit plan rules that distinguish between employees based on criteria that merely correlate with age.  *See Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 141 (2008).  Retiree and pension status are "analytically distinct" from age, and their use in determining eligibility for retiree benefits thus does not violate the ADEA.  *Id.* at 143; *Harris v. County of Orange*, 902 F.3d 1061, 1072 (9th Cir. 2018); *see also Carson v. Lake County*, 865 F.3d 526, 535 (7th Cir. 2017) (holding the termination of workers who qualified for Medicare and supplemental health insurance plan did not violate ADEA as "age and insurance eligibility" are analytically distinct); *Nw. Airlines, Inc. v. Phillips*, 675 F.3d 1126, 1133 (8th Cir. 2012) (no ADEA violation for "differential treatment based on pension status, where pension status . . . itself turns, in part, on age") (quoting *Ky. Ret. Sys.*, 544 U.S. at 148).

Similar to the cases cited, the 2020 Plan Amendments were based, not on age, but on pension status.  Specifically, the benefit changes require Medicare-eligible

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-CV-10914-CAS-JEM)**

pensioners to rely on Medicare as their primary coverage, unless they have sufficient sessional earnings to qualify for active coverage; their secondary coverage has been changed as well.[13]  As Plaintiffs recognize in their Complaint, the distinction made is not between older and younger participants, but rather is between older participants who are receiving pensions and those who are not.  *See* FAC ¶ 134 (alleging that the changes "impose a penalty" on participants who take "a vested *pension*") (emphasis added); *see also id.* ¶¶ 9, 86, 119 (linking change to pension status).  The same is true with respect to the change in the coverage period.  As such, these changes do not discriminate based on age.[14]

Any doubts as to the legality of the Plan's changes are resolved by an explicit EEOC regulation that exempts from ADEA scrutiny provisions that alter, reduce or eliminate health benefits for "retired participants" who are "eligible for Medicare."  29 C.F.R. § 1625.32(b); *see also Fulghum v. Embarq Corp.*, 785 F.3d 395, 419-21 (10th Cir. 2015) (termination or reduction of company-paid medical and prescription drug benefits for Medicare-eligible retirees exempted from ADEA prohibition through EEOC regulation); *Lefevre v. Niagara Mohawk Power Corp.*, 610 F. Supp. 2d 212, 215-16 (N.D.N.Y. 2009) (charging Medicare-eligible retirees a greater premium than non-Medicare eligible retirees exempted through EEOC regulation).

Here, in order to preserve the long-term health of the Plan while also leveraging another source of health coverage available for certain participants, the SAG-AFTRA Trustees decided to reduce or alter health benefits for Medicare-eligible pensioners, in

---

[13] Insofar as the secondary coverage was also changed for non-pensioners who had no sessional earnings at all, *see supra* p. 6, there are no grounds for an age-based challenge since these participants are clearly retired; and plans may amend or eliminate retiree health benefits at any time, and specifically are permitted to eliminate retiree health benefits based on Medicare eligibility.  *See infra* p. 24.

[14] Additionally, the Unruh Act, Cal. Civ. Code § 51.5, prohibits *business establishment* discrimination, and thus also has no application here.  *See Johnson v. Riverside Healthcare Sys. LP*, 534 F.3d 1116, 1124-26 (9th Cir. 2008); *Lewis v. Pac. Mar. Ass'n*, No. C 06-04941 CRB, 2007 WL 2429554, at *11 (N.D. Cal. Aug. 24, 2007).

- 24 -

addition to making other significant changes affecting other participants.  That the SAG-AFTRA Trustees, when faced with projected deficits, made cost-saving changes in the benefits provided to participants with Medicare coverage cannot serve as the basis for age discrimination claims.

## III.   PLAINTIFFS FAIL TO STATE A CO-FIDUCIARY LIABILITY CLAIM

Counts III and IV of the Complaint alleging co-fiduciary liability under ERISA § 405(a), 29 U.S.C. § 1105(a) should be dismissed because, for the reasons discussed above, Plaintiffs have not adequately pled an underlying breach of fiduciary duty in Counts I and II.  *See, e.g.*, *Raya v. Barka*, No. 19-cv-2295-WQH-AHG, 2020 WL 3469374, at *7 (S.D. Cal. June 25, 2020) (dismissing co-fiduciary breach claim under ERISA § 405(a) because a "plaintiff cannot state a claim for co-fiduciary liability without first stating a claim for breach of fiduciary duty under ERISA"); *Ely*, 2019 WL 438338, at *8 (dismissing co-fiduciary breach claim against individual trustees because the board of trustees "was not performing a fiduciary act" when it amended rehabilitation plan).

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed in its entirety for failure to state claims for breach of fiduciary duty or co-fiduciary breach.

Dated: April 30, 2021          By:   /s/ Myron D. Rumeld
                                     Myron D. Rumeld*
                                     mrumeld@proskauer.com
                                     Neil V. Shah*
                                     nshah@proskauer.com
                                     Anastasia S. Gellman*
                                     agellman@proskauer.com
                                     PROSKAUER ROSE LLP
                                     Eleven Times Square
                                     New York, NY 10036
                                     Tel.: 212.969.3000
                                     Fax: 212.969.2900

                                     Scott P. Cooper (SBN 96905)
                                     scooper@proskauer.com
                                     Jennifer L. Jones (SBN 284624)
                                     jljones@proskauer.com

- 25 -

PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Tel.: 310.557.2900
Fax: 310.557.2193

Jani K. Rachelson*
jrachelson@cwsny.com
Evan R. Hudson-Plush*
ehudson-plush@cwsny.com
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, NY 10022-4869
Tel.: 212.563.4100
Fax: 646.473.8254

*admitted pro hac vice*

*Attorneys for Defendants*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**