Neville L. Johnson, State Bar No. 66329
Douglas L. Johnson, State Bar No. 209216
**Johnson & Johnson LLP**
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Tel:  310-975-1080
Fax:  310-975-1095
njohnson@jjllplaw.com
djohnson@jjllplaw.com

Steven. A Schwartz
**Chimicles Schwartz Kriner
& Donaldson-Smith LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Tel.: 610-642-8500
Fax: 610-649-3633
steveschwartz@chimicles.com
*Admitted Pro Hac Vice*

Edward Siedle
**Law Offices of Edward Siedle**
17789 Fieldbrook Circle West
Boca Raton, FL 33496
Tel.: 561-703-5958
esiedle@aol.com
*Admitted Pro Hac Vice*

Robert J. Kriner, Jr.
Emily L. Skaug
**Chimicles Schwartz Kriner
& Donaldson-Smith LLP**
2711 Centerville Road, Suite 201
Wilmington, DE 19808
rjk@chimicles.com
els@chimicles.com
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs and the Classes*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EDWARD ASNER, MICHAEL BELL, RAYMOND HARRY JOHNSON, SONDRA JAMES WEIL, DAVID JOLLIFFE, ROBERT CLOTWORTHY, THOMAS COOK, AUDREY LOGGIA, DEBORAH WHITE, DONNA LYNN LEAVY, individually on behalf of themselves and the other similarly situated members of the Counts I and III Class and the Counts II and IV Class as defined herein,

Plaintiffs,

**CASE NO. 2:20-cv-10914-CAS-JEM**

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: July 19, 2021
Time: 10:00 a.m.
Courtroom: 8D
Judge: Hon. Christina A. Snyder
Action Filed: December 1, 2020

1    v.

2    THE SAG-AFTRA HEALTH FUND;
     THE BOARD OF TRUSTEES OF THE
3    SCREEN ACTORS GUILD-
     PRODUCERS HEALTH PLAN; THE
4    BOARD OF TRUSTEES OF THE SAG-
     AFTRA HEALTH FUND; DARYL
5    ANDERSON; HELAYNE ANTLER;
     AMY AQUINO; TIMOTHY BLAKE;
6    JIM BRACCHITTA; ANN CALFAS;
     JOHN CARTER BROWN; DUNCAN
7    CRABTREE-IRELAND; ERYN M.
     DOHERTY; GARY M. ELLIOTT;
8    MANDY FABIAN; LEIGH FRENCH;
     BARRY GORDON; J. KEITH
9    GORHAM; NICOLE GUSTAFSON;
     JAMES HARRINGTON; DAVID
10   HARTLEY-MARGOLIN; HARRY
     ISAACS; MARLA JOHNSON;
11   ROBERT W. JOHNSON; BOB
     KALIBAN; SHELDON KASDAN;
12   MATTHEW KIMBROUGH; LYNNE
     LAMBERT; SHELLEY LANDGRAF;
13   ALLAN LINDERMAN; CAROL A.
     LOMBARDINI; STACY K. MARCUS;
14   RICHARD MASUR; JOHN T.
     MCGUIRE; DIANE P. MIROWSKI;
15   D.W. MOFFETT; PAUL MURATORE;
     TRACY OWEN; MICHAEL
16   PNIEWSKI; LINDA POWELL; ALAN
     H. RAPHAEL; JOHN E. RHONE; RAY
17   RODRIGUEZ; MARC SANDMAN;
     SHELBY SCOTT; DAVID
18   SILBERMAN; SALLY STEVENS;
     JOHN H. SUCKE; KIM SYKES;
19   GABRIELA TEISSIER; LARA
     UNGER; NED VAUGHN; DAVID
20   WEISSMAN; RUSSELL WETANSON;
     DAVID P. WHITE; SAMUEL P.
21   WOLFSON

22   Defendants.

23

24

25

26

27

28

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF FACTS ...................................................................... 3

I.   Background of the Claims .................................................................. 3

II.  Health Plans Merger: SAG Health Plan Trustees' Purported
     Complex Undertaking that Strengthened the Financial Health
     of the Plan and Ensured Comprehensive Benefits for All Participants ......... 4

III. SAG-AFTRA Health Plan Trustees Left Participants in the Dark
     Concerning the Doomed Health Benefit Structure and Funding Crisis .......... 6

IV.  SAG-AFTRA Health Plan Trustees Imprudently Chose Discriminatory
     Age-Based Benefit Cuts as the Means of Plan Management ......................... 7

LEGAL STANDARD FOR RULE 12(b)(6) MOTION ............................................ 9

ARGUMENT ........................................................................................ 10

I.   Count I States A Cognizable Claim That the SAG
     Health Plan Trustees Breached Their ERISA Fiduciary Duties
     in the Health Plans Merger ................................................................ 10

     A.   SAG Health Plan Trustees Acted as ERISA Fiduciaries
          in the Health Plans Merger ......................................................... 10

     B.   Plaintiffs' Claim of Breach Is Plausible ........................................ 16

II.  Count II States A Cognizable Claim That the SAG-AFTRA
     Health Plans Trustees Breached Their ERISA Fiduciary Duties
     in Failing to Disclose Material Information and Misleading
     Participants in connection with the Union's Collective
     Bargaining and Approval Processes .................................................... 17

     A.   Plaintiffs State a Cognizable ERISA Fiduciary Duty Breach Claim .. 17

     B.   Plaintiffs' Disclosure Claim is Plausible ...................................... 21

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

III.   SAG-AFTRA Health Plan Trustees Breached Their
       ERISA Fiduciary Duties by Imposing Discriminatory Benefit Cuts ............ 21

       A.   Benefit Cuts as a Means of Financial Plan
            Management was a Fiduciary Function .............................................. 22

       B.   Plaintiffs' ERISA Claim Does Not Seek to Sidestep
            the Requirements of Anti-discrimination Laws ................................. 23

       C.   Benefit Cuts Discriminate Based on Age in Violation
            of Governing Plan Documents ............................................................ 24

IV.    Counts III and IV State Claims for Co-Fiduciary Liability ......................... 26

CONCLUSION ............................................................................................................ 26

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1

# **TABLE OF AUTHORITIES**

2

<u>**CASES**</u>

3

*Acosta v. Pacific Enters.*,

4
    950 F.2d 611 (9th Cir. 1991) ............................................................... 18

5

*Barker v. American Mobil Power Corp.*,

6
    64 F.3d 1397 (9th Cir. 1995) .............................................................. 17

7

*Beck v. PACE Int'l Union*,

8
    551 U.S. 96 (2007) .............................................................................. 12

9

*Bins v. Exxon Co. U.S.A.*,
    220 F.3d 1054 (9th Cir. 2000) ...................................................... 18, 19

10

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*,

11
    12 F.3d 1292 (3d Cir. 1993) ............................................................... 18

12

*Carson v. Lake Cty.*,

13
    865 F.3d 526 (7th Cir. 2017) .............................................................. 25

14

*In re Computer Scis. Corp. Erisa Lit.*,

15
    635 F. Supp. 2d 1128 (C.D. Cal. 2009) ............................................. 14

16

*Farr v. West Comm., Inc.*,

17
    151 F.3d 908 (9th Cir 1998) ...................................................... 17, 18, 19

18

*Fulghum v. Embarq Corp*,

19
    785 F.3d 395 (10th Cir. 2015) ............................................................ 25

20

*Hall v. Hill Refrigeration, Inc.*,
    36 F. Supp. 2d 1185 (C.D. Cal. 1999) ............................................... 20

21

*Harris v. Cty. of Orange*,

22
    902 F.3d 1061 (9th Cir. 2018) ............................................................ 25

23

*Hazen Paper Co. v. Biggins*,

24
    507 U.S. 604 (1993) ............................................................................ 24

25

*Ky. Ret. Sys. v. EEOC*,

26
    554 U.S. 135 (2008) ............................................................................ 25

27

*Lefevre v. Niagra Mohawk Power Corp.*,

28
    610 F. Supp. 2d 212 (N.D.N.Y. 2009) ............................................... 25

iii

*Lockheed v. Spink*,
  517 U.S. 882 (1996) ...................................................................................10, 14

*Murphy v. FedEx Nat'l LTL, Inc.*,
  582 F. Supp. 2d 1172 (E.D. Mo. 2008) ...............................................................21

*Northwest Airlines Inc. v. Phillips*,
  675 F.3d 1126 (8th Cir. 2012) ............................................................................25

*Paulson v. CNF, Inc.*,
  559 F.3d 1061 (9th Cir. 2009) ............................................................................12

*Pizzella v. Vinoskey*,
  409 F. Supp. 3d 473 (W.D. Va. Aug. 2, 2019)....................................................21

*Scott v. Gate Gourmet, Inc.*,
  2021 U.S. Dist. LEXIS 33020 (C.D. Cal. Feb. 22, 2021) ....................................9

*Sheen et al v. Screen Actors Guild et al*,
  No. 2:12-cv-01468 (C.D. Cal.) ...................................................................3, 4, 15

*Varity v. Howe*,
  516 U.S. 489 (1996) .......................................................................10, 13, 14, 20

*Waller v. Blue Cross*,
  32 F.3d 1337 (9th Cir. 1994) ....................................................................11, 14, 22

## STATUTES

29 U.S.C. 1132(a)(3) ................................................................................................14

29 U.S.C. § 1002(21)(A) ...........................................................................................10

## OTHER AUTHORITIES

29 C.F.R. 1625.32, *et seq.*.......................................................................................25

Fed. R. Civ. P. 12(b)(6) ................................................................................3, 9, 16, 26

iv

Plaintiffs respectfully submit this memorandum of points and authorities in opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC").

## **PRELIMINARY STATEMENT**

A fundamental tenet of SAG-AFTRA's mission to do all things necessary and proper to advance and promote the welfare and interests of Union performers has been to provide Union health coverage to senior performers and their families. ¶¶ 3, 49.[1] Without warning, on August 12, 2020, Defendants jettisoned this tenant amidst an industry-wide work shutdown and health crisis from the COVID-19 pandemic. The current Union health plan, the SAG-AFTRA Health Plan, announced fundamental changes to the health benefit structure to manage a widening funding deficit ("Benefit Cuts"). In enacting the Benefits Cuts, the SAG-AFTRA Health Plan Trustees deliberately targeted participants 65 and older, who represent more than one-third of the Plan's participants and their families.  The Trustees imposed the Benefit Cuts on those older Plan participants even though those participants' earnings will continue to fund the Plan, and even though those older participants' prior earnings have funded the Plan's reserves, which were projected to be approximately $360 million at the end of 2020. Obtuse to the cruelty resulting from their actions, the Plan trustees boast having solved the projected deficit with projected surpluses.

The SAG-AFTRA Health Plan resulted from a January 2017 merger of the Screen Actors Guild-Producers Health Plan ("SAG Health Plan") and the AFTRA Health Plan ("Health Plans Merger"). SAG-Health Plan Trustee and SAG-AFTRA National Executive Director Defendant David White represented to SAG Health Plan participants that the Health Plans Merger resulted from "complex undertaking" by the Health Plan Trustees that would strengthen the financial health of the Plan and ensure

---

[1] Affidavit of Emily L. Skaug, Ex. A (SAG-AFTRA Constitution, effective Oct. 11, 2019).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

comprehensive benefits for all participants. Within approximately 18 months of the Health Plans Merger, however, the Trustees of the merged plan, the SAG-AFTRA Health Plan, knew the Plan had a major structural funding problem and the benefit structure was not sustainable for all participants.

Further, knowing by mid-2018 the health benefits structure was doomed by a widening funding imbalance, the SAG-AFTRA Health Plan Trustees nevertheless kept the participants fatefully in the dark, as the Union bargained and approved the three major collective bargaining agreements in 2019 and 2020 that fund the Health Plan based on all earnings of all performers. The SAG-AFTRA Health Plan Trustees even failed to inform the members of the negotiating committees who were not Health Plan Trustees about the Health Plan's funding crisis and doomed benefit structure, thereby impairing their ability to negotiate the contract on an informed basis in a manner designed to protect health benefits.

In addition, at least seven (7) Health Plan Trustees – Defendants David White, Ray Rodriquez, John McGuire, David Hartley-Margolin, John Carter Brown, Mike Pniewski and Linda Powell — represented the Union and members in the Union's bargaining and approval processes, and misleadingly accepted and approved the inadequate funding terms without disclosing the known facts. Then, ironically, in August 2020, SAG-AFTRA Health Plan CEO, Michael Estrada, and trustees David White, Richard Masur and Barry Gordon attributed the Benefit Cuts to the failure of the Union's collective bargaining to have obtained the required funding.

Meanwhile, while participants were in the dark, the SAG-AFTRA Health Plan Trustees had a fiduciary duty to prudently evaluate options to address the alleged funding imbalance and act in accordance with the Plan's governing documents. In violation of their duties, they chose to impose the Benefit Cuts to target *en masse* performers age 65 and older. Besides this class action suit, at least 13 participants have filed claims with the EEOC. The Plan engaged Plan Counsel to defend the cuts

in this lawsuit and the EEOC's investigations, even though the same Plan Counsel is representing Defendants in this action and presumably provided advice to the Trustees with respect to the Benefit Cuts.

The FAC states claims for breach of ERISA fiduciary duties against the SAG Health Plan Trustees relating to the Health Plans Merger, and against the SAG-AFTRA Health Plan Trustees relating to the failure to disclose material information and implementation of discriminatory Benefit Cuts. For the reasons discussed below, Defendants' Rule 12(b)(6) motion should be denied.

## STATEMENT OF FACTS

### I.    Background of the Claims

SAG and AFTRA merged into SAG-AFTRA in March 2012. ¶ 51. At the time of the Union Merger, the respective health plans of SAG and AFTRA were separate collectively bargained, joint-trusted labor-management trusts. ¶ 52.

A goal of the Union Merger was to eventually merge the respective health plans of SAG and AFTRA. ¶¶ 52, 69. SAG members challenged the Union Merger, asserting the Union had not adequately investigated the impact of mergers of the benefit plans. ¶¶ 53-56 (*Sheen et al v. Screen Actors Guild et al*, No. 2:12-cv-01468 (C.D. Cal.)).[2]

The defendants in *Sheen* asserted any future benefit plans merger would be considered by the Plan trustees based on a detailed impact study and determination whether a merger was in the best interests of the participants. ¶ 57. McGuire, a Defendant here, submitted a Declaration that included the then-operative SAG-Health Plan Trust Agreement,[3] which expressly set forth the Trustees' powers and duties subject to ERISA fiduciary duties. ¶¶ 58, 59.

---

[2] The defendants in *Sheen* included Defendants White, Aquino and Vaughn, who at the time were SAG Health Plan Trustees, and Defendant Hartley-Margolin, who at the time was a member of the SAG National Board. ¶ 53. Defendants Crabtree-Ireland and McGuire submitted Declarations in support of the opposition. ¶ 58, 66.

[3] The then-operative trust agreement set forth the trustees' powers and duties in Article IV Section 1(a)-(w). The trustees apparently amended Article IV Section 1

3

The defendants in *Sheen* also submitted a "Feasibility Report" ("Lerner Report") by highly experienced ERISA counsel. ¶¶ 64-65; Skaug Aff. Ex. D. The Lerner Report stated a merger of the unions would not require a merger of the benefit plans, but "the main impact of a merger of the two unions on the existing plans (or merged plan) would be increased ability to negotiate contribution increases to the plan or plans and to unionize non-unionized employers to increase the participant and contribution base." Skaug Aff. Ex. D at 2. The Lerner Report also stated while "a health plan generally may reduce participants' benefits or increase employee premiums… subject to certain advance notice requirements… *[a] merger of health plans may be effected for the purpose of preventing future benefit cuts and strengthening the contributions base of the combined plan*." ¶ 65; Skaug Aff. Ex. D at 9 (emphasis added).

The Lerner Report generally outlined the process by which the benefit plan trustees would consider a potential merger and be required to conclude a merger was in the best interests of the plan participants in order to proceed. ¶ 65; Skaug Aff. Ex. D at 9. This process would require the plan trustees, acting as ERISA fiduciaries, to conduct a detailed study of the impact of merging the plans versus continuing on a stand-alone basis, in consultation with professional advisors. ¶ 65; Skaug Aff. Ex. D at 2.[4]

## II.   Health Plans Merger: SAG Health Plan Trustees' Purported Complex Undertaking that Strengthened the Financial Health of the Plan and Ensured Comprehensive Benefits for All Participants

An agreement to merge the SAG and AFTRA health plans was finally announced in June 2016. ¶ 68. The Union represented in the Summer 2016 SAG-

---

subsequently to add Section 1(x) with the authority to merge the plan and its benefits. Skaug Aff. Ex. B at Art. IV, § 1.

[4] The Lerner Report cited DOL Field Assistance Bulletin 2002-02, dated November 4, 2002, for the proposition that where the Plan's governing documents provide that actions are taken in a fiduciary capacity, the actions to establish, continue, design, merge or terminate a plan are also taken in their capacity as fiduciaries. Skaug Aff. Ex. D at 5 n.6.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

AFTRA Magazine disseminated to all members that an extensive study had been required "*because the plans are separate from the Union and not administered by the Union; the boards of trustees are composed of representatives of labor and employers who contribute to the plan.*" ¶ 69 (emphasis in original).[5] Defendant White stated in the Summer 2016 Magazine: "Fully 65,000 souls who depend on these plans will become the beneficiaries of a single, financially strengthened plan that offers automatic family coverage for all participants," and the merger would provide "a robust foundation of health care for our membership, which the trustees can continue to improve upon, nurture and grow over time." ¶ 70. In a news update to members sent June 8, 2016, Defendant White stated the plan trustees had engaged in "a complex undertaking… to arrive at solutions… to strengthen the overall financial health of the plan while ensuring comprehensive benefits for all participants." ¶ 68.

The Health Plans Merger was effective January 1, 2017. ¶ 74. The SAG Health Plan Trustees merged the SAG Health Plan under Article IV Section 1(x) of the SAG Health Plan Trust Agreement. ¶ 74; Skaug Aff. Ex. C at 1. Article IV Section 1 sets forth the trustees' powers and duties "[i]n the administration of the Health Fund." ¶ 59; Skaug Aff. Ex. B at Art. IV, § 1. Article IV Section 3 requires the trustees to discharge their duties as set forth in the "Health Plan"[6] subject to ERISA fiduciary duties. ¶ 59; Skaug Aff. Ex. C at Art. IV, § 3. Likewise, the SAG Health Plan SPD stated "ERISA imposes [fiduciary] duties upon the people who are responsible for the operation of the… plan." ¶ 80

Within 18 months of the Health Plans Merger, the SAG-AFTRA Health Plan Trustees knew the health benefit structure was not sustainable for all participants, and a major structural change was required "to help balance the plan's books" in terms of

---

[5] SAG-AFTRA Magazine, Vol. 5, No. 2 at 23 (Summer 2016), available at https://www.sagaftra.org/files/sag-aftra_-_summer_2016_-_member.pdf

[6] "Health Plan" is defined as "this trust agreement, the Health Fund, and any plan or plans of welfare eligibilities and benefits adopted by the Plan Trustees pursuant to this agreement." Skaug Aff. Ex. C at Art. I, § 7.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plan costs versus funding. ¶¶ 79, 94, 26, 127. The SAG-AFTRA Health Plan had widening deficits beginning in 2018 and continuing thereafter. ¶ 127.[7]

Given the direly doomed condition of the health benefit structure known shortly after the Health Plans Merger, it is reasonable to infer that the SAG Health Plan Trustees either failed to conduct a prudent investigation and evaluation of the impact of the merger to support the choice to merge and the statements by White, or the Trustees knew the financial health of the merged plan would not sustain the benefit structure and ensure comprehensive benefits for all participants but nevertheless chose to proceed with the merger and falsely state otherwise.

## III.   SAG-AFTRA Health Plan Trustees Left Participants in the Dark Concerning the Doomed Health Benefit Structure and Funding Crisis

As the potentially fatal funding deficit widened and the SAG-AFTRA Health Plan Trustees evaluated options to address it, in 2019 and 2020 the Union negotiated and approved three major contracts – 2019 Commercials, 2019 Netflix and 2020 TV/Theatricals that fund the health plan based on all earnings of all performers. ¶¶ 99-101. The SAG-AFTRA Health Plan Trustees failed to disclose the doomed state of and funding required to sustain the benefit structure, in connection with the Union's collective bargaining process, when the trustees knew Union and the participants would address plan funding and earnings-based plan funding, and had options to increase plan funding such as increased employer contributions, wage increase diversions or work stoppages or strikes. ¶ 97. Moreover, Defendants White, Rodriguez, Hartley-Margolin, Pniewski and Powell, undertook to represent the Union and the participants in the bargaining and approval processes. ¶ 102. They not only failed to disclose the doomed benefit structure and funding crisis to the Union's representatives and members in the processes who were not Health Plan Trustees,

---

[7] The SAG-AFTRA Health Plan Trust Agreement required the Trustees to receive projections at every meeting concerning the sustainability of the Plan's health benefit structure. ¶ 94; Skaug Aff. Ex. C at Art. XIII, § 2.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

they also misleadingly accepted and approved terms they knew were inadequate to sustain the benefit structure. *Id*.[8] In fact, it is reasonable to infer during the TV/Theatrical bargaining and approval process in 2020, the SAG-AFTRA Health Plan Trustees knew changes were coming that would make employer contributions based on residuals worthless to many performers 65 and older. As a result, the Union and the participants lost effective rights and opportunities to address the plan funding issues on an informed basis, as the SAG-AFTRA Health Plan Trustees conceded by attributing the Benefit Cuts to the failure of the Union to have obtained sufficient funding in collective bargaining. ¶ 108.

Defendant White and the Plan also failed to disclose the looming massive structural cuts in early April and June 2020, when the Union and the SAG-AFTRA Health Plan announced a temporary reduction of Health Plan premiums and an extension of the Union dues deadline, in response to the COVID-19 pandemic. ¶ 78. *See* Skaug Aff. Ex. E.

## IV. SAG-AFTRA Health Plan Trustees Imprudently Chose Discriminatory Age-Based Benefit Cuts as the Means of Plan Management

The SAG Health Fund was the surviving entity in the Health Plans Merger. ¶ 74. The SAG-AFTRA Health Plan Trust Agreement requires the plan trustees to maintain the health plan and any amendments in compliance with all applicable positive law. ¶¶ 112-14; Skaug Aff. Ex. C at Art. XIV, § 11. The SAG-AFTRA Health Plan SPD states "No one, including your employer, your union or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining benefits under the Plan or exercising your rights under ERISA." ¶ 80. The Plan's June 2020 notice to participants in regarding the premium suspension in April 2020 included the "Section 1557 Non-discrimination Notice." Skaug Aff. Ex. E. The

---

[8] The Union Constitution establishes the Union's collective bargaining process including the determination of proposal packages, negotiations committees and National Board approval and membership ratification. Skaug Aff. Ex. A at Art. XI.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

plan's letter to participants regarding the Benefit Cuts also included the "Section 1557 Non-discrimination Notice." ¶ 132.[9]

The SAG-AFTRA Health Plan Trustees chose the Benefit Cuts as a means of financial plan management to address the plan's widening funding gap. ¶¶ 94, 108, 126, 127. The Benefit Cuts targeted participants age 65 and older to eliminate *en masse* likely one-third of the plan participants and their families. The Plan's reserve funded by the earnings of these participants could have sustained the benefit structure until 2024, and the earnings of these performers will continue to fund the Plan under the collective bargaining agreements. ¶¶ 126-28.

Prior to the Benefit Cuts, Senior Performer Coverage applied to participants age 65 and older with qualifying vested pension credit. ¶¶ 7, 75, 85, 118. The coverage was secondary to Medicare, unless the participant qualified based on earnings. This coverage was also unconditionally promised to surviving spouses until death or remarriage of the surviving spouse. ¶¶ 85, 87. The Benefit Cuts eliminated Senior Performer Coverage for participants and their surviving spouses. These senior performers will lose Union health coverage unless they are eligible under the new rules, which count only sessional earnings and disqualify residual earnings. ¶¶ 9, 119, 121, 134.

In addition, all earnings (residuals and sessional) of participants younger than 65 will count toward health benefit eligibility, regardless whether the participant is taking a Union pension. *Id*. A participant can take a pension at age 55. All earnings of participants age 65 and older will count toward Union health benefit eligibility only if the participant has at least some sessional earnings. ¶¶ 118. No residuals earnings of participants age 65 and older and taking a Union pension, however, will count toward eligibility, yet all earnings of these participants for Union work will continue

---

[9] SAG-AFTRA Health Plan Letter to Participants (Aug. 2020), available at https://www.sagaftraplans.org/sites/default/files/inline-files/Broader%20Changes%20Letter%20FINAL%20r8.pdf

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

to fund the Health Plan under the collective bargaining agreements, and the Union dues of these participants will continue to be assessed based on *all* earnings. ¶¶ 7, 11, 13, 50, 75-76, 118.

Further, the base earnings year for only participants 65 years of age and older was immediately set to October 1-September 30. ¶¶ 9, 89, 122. This unfairly limited the time for affected older participants from seeking opportunities urgently for sessional earnings, when the trustees knew sessional opportunities had been limited by the Covid-19 pandemic. ¶¶ 39, 89, 122. Further, the benefit period for all participants 65 and older was set to January 1 - December 31. ¶¶ 35, 89, 122. The change also took pre-qualified coverage from some participants 65 and older. Plaintiff, David Jolliffe, lost three months of coverage for which he had already qualified. ¶ 122.

"A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Scott v. Gate Gourmet, Inc.*, 2021 U.S. Dist. LEXIS 33020, *8 (C.D. Cal. Feb. 22, 2021) (internal citations omitted). In considering a Rule 12(b)(6) motion, "a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them." *Id.* (internal citations omitted). "The complaint must be read in the light of most favorable to the nonmoving party." *Id.* (internal citations omitted). "Ultimately, determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal citation and alterations omitted).

## ARGUMENT

**I.  Count I States A Cognizable Claim That the SAG Health Plan Trustees Breached Their ERISA Fiduciary Duties in the Health Plans Merger**

Count I asserts that the SAG Health Plan Trustees breached their ERISA fiduciary duties in the Health Plans Merger. ¶¶ 68-83. Defendants argue the SAG Health Plan Trustees' "decision to merge the two health plans… concerns the structure of the plan and thus falls squarely within the realm of settlor functions." Defs.' Mem. at 11-12 (collecting cases). Alternatively, Defendants argue Plaintiffs do not state a plausible breach claim because the respective plans' Form 5500s do not support that the AFTRA Health Plan was financially weaker than the SAG Health Plan at the time of the merger. *Id.* at 17. As discussed below, Defendants' arguments are without merit.

**A.  SAG Health Plan Trustees Acted as ERISA Fiduciaries in the Health Plans Merger**

ERISA defines ERISA fiduciaries in terms of a person's actual function in the particular factual circumstances. A person is an ERISA fiduciary with respect to a plan to the extent the person "exercises any discretionary authority or discretionary control over the management of the plan or exercises any authority or control over the management or disposition of its assets," or "has any discretionary authority or discretionary responsibility over plan administration." 29 U.S.C. § 1002(21)(A). Fiduciary status turns on whether the challenged conduct in the alleged circumstances constitutes an act of plan "administration" or "management." *Varity v. Howe*, 516 U.S. 489, 802-503 (1996); *Lockheed v. Spink*, 517 U.S. 882, 890 (1996).

In the present case, the SAG Health Plan Trustees acted in plan "administration" as ERISA fiduciaries. Their authority to merge was expressly provided by the SAG Health Plan Trust Agreement in plan "administration" and subject to ERISA fiduciary duties. They purportedly evaluated and considered the impact of a merger on the plan and its participants and concluded the merged plan would strengthen the financial health of the plan and ensure comprehensive benefits

10

for all participants, and made the discretionary choice to proceed with the merger rather than remain as a stand-alone plan.

The SAG Health Plan Trustees' authority to merge under Article IV Section 1(x) of the SAG Health Plan Trust Agreement was expressly in their powers and duties in Article IV Section 1 in plan "administration," and expressly subject to ERISA fiduciary duties. ¶ 74.[10] The SAG Health Plan Trustees, thus, themselves expressly prescribed their authority to merge in plan "administration" subject to ERISA fiduciary duties.

Moreover, even if the technical decision to pursue a potential merger was a decision concerning plan design, the SAG Health Plan Trustees process to evaluate the impact of a merger on the financial strength of the merged plan and future benefits for the participants, the discretionary choice following the evaluation to proceed with a merger rather than remain as a stand-alone plan, and the public statements following the evaluation that the merger would strengthen the financial health of the plan and ensure comprehensive benefits for all participants, were ERISA fiduciary actions in plan "administration."

The Ninth Circuit has distinguished a business decision by a plan sponsor concerning plan design, which is ordinarily "settlor" in nature, from discretionary processes to implement the design decision, which is a fiduciary action. In *Waller v. Blue Cross*, the employer-sponsor, Blue Cross, decided to terminate the welfare plan. Blue Cross selected an annuity provider to satisfy plan liabilities in connection with the termination. 32 F.3d 1337, 1342 (9th Cir. 1994). The plaintiffs alleged Blue Cross breached its ERISA fiduciary duties in selecting the annuity provider. *Id*. The court concluded: "[b]y alleging that Blue Cross breached its fiduciary duty in the selection of annuity providers, plaintiffs attack not only the *decision* to terminate, but rather the

---

[10] The SAG Health Plan SPD, likewise, stated the persons who operated the plan were subject to ERISA fiduciary duties. ¶ 27.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*implementation* of the decision. We believe that this distinction is dispositive and hold that Blue Cross acted in a fiduciary capacity when choosing annuity providers to satisfy plan liabilities." *Id.* (emphasis in original). The Court further held that "ERISA's definition of 'fiduciary' support[ed]" its conclusion as "[t]he choice of an annuity provider is the quintessential exercise of "discretionary control." *Id.* "It would be odd indeed if ERISA operated . . . to absolve the employer or administrator of making any meaningful investigation of the annuity provider at such a critical moment in the life of the plan." *Id.* at 1343. *Accord Paulson v. CNF, Inc.*, 559 F.3d 1061, 1076 (9th Cir. 2009) ("[D]ecision to spin a plan off, as opposed to implementing the spin off, is not a fiduciary act") (citing *Lockheed*, 517 U.S. at 890-91). *See also Beck v. PACE Int'l Union,* 551 U.S. 96, 102 (2007) (observing sponsor's choice of whether to merge as being analogous to discretionary choice of annuity provider).

Similarly, *Scardelletti v. Bobo* addressed the plan trustees' adoption of amendments to a cost of living adjustment which increased the funding cost of the plan and doomed the plan to failure. 897 F. Supp. 913, 915 (D. Md. 1995). Plaintiffs alleged the trustees breached their ERISA fiduciary duties when they neglected to consider or investigate the feasibility of the amendments, voted to recommend the adoption of the amendments without an actuarial study analyzing the effect of the amendments, and failed to supervise the plan's service provider or require the completion of an actuarial study. *Id.* at 916-17. The trustees asserted they acted in a settlor capacity when amending the plan and therefore were not subject to fiduciary liability under ERISA. *Id.* at 917. The court rejected defendants' argument, concluding that the trustees "may be liable for acts in which they exercised discretionary authority or responsibility taken prior to amending the plan." *Id.* at 918. "The plan documents themselves allocate the relevant discretionary authority or responsibility which is 'pivotal' to the statutory definition of 'fiduciary,'" and in order to meet the prudent person standard, fiduciaries must undertake a careful and impartial

investigation where they do not have sufficient experience and familiarity with a particular matter. *Id.* at 918-19.

Likewise, Defendant White's public statements following the trustees' impact evaluation concerning the trustees' choice to proceed with a merger were made in plan "administration" subject to ERISA fiduciary duties. The statements were included in the SAG-AFTRA Union magazine distributed to all Union members and in a letter by White issued to the members of SAG-AFTRA. ¶¶ 6, 70-71. In *Varity*, the Supreme Court considered whether in the particular factual circumstances an employer that was also the plan administrator was acting merely as an employer or an ERISA fiduciary in plan "management" or "administration," where the employer had misled a group of employees as to the financial health of a new business to which employees were induced to transfer their employment and benefits. 516 U.S. at 498-503. The employer had formed a new business to house the company's money-losing segments. *Id.* at 493. The employer held a special meeting of employees and discussed the future outlook of the new business, its likely financial viability, and the security of their employee benefits. *Id.* at 493-94. The thrust of the employer's remarks was the employees' benefits would remain secure if the employee transferred, although the employer knew otherwise. *Id.* at 494 The new business ended its second year in receivership. *Id.* at 491. In concluding that the employer-administrator had acted as an ERISA fiduciary in providing benefits information to the employees, the Court considered that a reasonable employee would have believed the employer-administrator's statements had been drawn from its "expert knowledge" in the subject of the benefits. *Id.* at 503. "While it may be true that amending or terminating a plan . . . is beyond the power of a plan administrator [] -- and, therefore, cannot be an act of plan 'management' or 'administration' -- it does not follow that making statements about the likely future of the plan is also beyond the scope of administration." *Id.* at 505.

Plaintiffs assert the SAG Health Plan Trustees, including White, either failed to conduct a duly prudent process to support White's statements, or knew the merged plan would not strengthen the financial health of the plan or ensure comprehensive benefits for all participants and nevertheless chose to proceed with the merger. White's statements related directly to the strength of the merged plan and safety of the future benefits after the SAG Health Plan trustees' evaluation but prior to the 2017 Health Plan Merger. The statements were either misleading because they were not made on the basis of an exercise of the requisite care, skill and diligence, or were knowingly false, in either case in breach of their ERISA fiduciary duties. *See In re Computer Scis. Corp. Erisa Lit.*, 635 F. Supp. 2d 1128, 1139-40 (C.D. Cal. 2009) ("[A] fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.") (citation omitted). *See also* 29 U.S.C. 1132(a)(3) (authorizing civil action by participants for injunctive or other equitable relief).

The SAG Health Plan Trustees' impact evaluation, the discretionary choice following the evaluation to proceed with a merger rather than remain as a stand-alone plan and the statements following the evaluation but prior to the merger that the merger would strengthen the plan and ensure comprehensive benefits, were actions in plan "administration" subject to ERISA fiduciary duties.

Defendants' argument that the Supreme Court trilogy of *Curtis-Wright*, *Lockheed* and *Hughes* and their progeny foreclose Plaintiffs' ERISA fiduciary duty-based claim relating to the Health Plans Merger, is without merit. As discussed above, the alleged misconduct in this case was in plan "administration." *Waller* and *Scardelletti* were decided after the trilogy and acknowledged the settlor plan design decision cases. *Varity* is also a decision by the Supreme Court after the trilogy.

None of the "merger" or "amendment" cases cited by Defendants Defs.' Mem. at 11-12 involved a purportedly extensive process to consider the impact of a merger

---

14

or amendment under the authority of a trust agreement expressly in plan administration and subject to ERISA fiduciary duties, or statements by plan trustees concerning the positive impact the merger or amendment would have on the safety of participants' future benefits.

Defendants argue the SAG Health Plan Trust Agreement did not subject the trustees to ERISA fiduciary duties in the Health Plans Merger. They crop a quote to argue that the SAG Health Plan Trust Agreement merely states the circular proposition "that fiduciary duties apply when the SAG Trustees are 'discharging' their fiduciary duties." Defs.' Mem. at 12-13. As discussed above, the provision, in fact, states that the trustees shall discharge their duties set forth in the trust agreement and trust subject to the ERISA fiduciary standard. Skaug Aff. Ex. B at Art. IV, § 3.[11]

Defendants argue that DOL Bulletin 2002-2 cited in the Lerner Report "has since been superseded" by the Supreme Court trilogy. Defs.' Mem. at 12-13, n.7 & n.9. Defendants are wrong. DOL Bulletin 2002-2 *and* the Lerner Report post-date the trilogy. Further, none of the attorneys who signed on to the Lerner Report expressed disagreement with the DOL Bulletin or statement, including one of Defendants' counsel in this action.

Defendants argue the DOL Bulletin 2002-2 would not impose ERISA fiduciary duties based on the language of the SAG Health Plan Trust Agreement, and was questioned in *Ronches*, 2009 U.S. Dist. LEXIS 139975, *44 n.82 (C.D. Cal. Oct. 30, 2009). Defs.' Mem. at 13. As discussed above, the authority to merge the plan was expressly defined by the trust agreement, which the trustees approved, in plan "administration" and subject to ERISA fiduciary duties. Further, the court in *Ronches* did not address any particular trust provision that expressly defined trustees' authority

---

[11] Defendants argue that most of the statements by defendants in *Sheen* concerning the standards and process for any eventual benefit plan merger were made by SAG union representatives. Defs.' Mem. at 13 n.9. Neither Lerner nor any of the other supporting highly experienced ERISA attorneys added such a qualification.

in plan administration and subject to ERISA fiduciary duties. *Ronches* at 45. The court, *in dicta*, merely questioned whether a trust provision could change ERISA's definition of fiduciary, concluding that any such trust provision would apply equally to multi-employer plans and single employer plans, and expressing doubt that trust documents could alter ERISA's definition of fiduciary. *Id.* at 37-43.

## B. Plaintiffs' Claim of Breach Is Plausible

Defendants' alternatively argue Count I is implausible because Plaintiffs' claim is that the AFTRA Health Plan was financially weaker than the SAG Health Plan, and the plans' respective Forms 5500 do not support that proposition. Defs.' Mem at 6, 17. This argument mischaracterizes the claim. Plaintiffs' claim is not that the SAG Health Plan was relatively weaker as a stand-alone plan than the AFTRA Health Plan. Plaintiffs claim the SAG Health Plan Trustees chose to proceed with a merger that purportedly would strengthen the Plan and ensure comprehensive benefits for all participants rather than remain as a stand-alone plan, and the merger, in fact, was doomed by a potentially fatal structural imbalance shortly after the merger. The merger entailed far more structurally than combining the respective assets and liabilities of the stand-alone plans. ¶ 68 ("complex undertaking… to arrive at solutions…").

In any event, Defendants' argument, at most, asserts that as a factual matter the cited relative financial metrics of the separate stand-alone plans based on the Forms 5500 would not support a claim that the SAG Health Plan as a stand-alone plan was relatively stronger in terms of assets and liabilities than the AFTRA Health Plan, prior to the merger. Such an assertion of fact that may or may not be proven surely does not support a Rule 12(b)(6) dismissal.

## II.     Count II States A Cognizable Claim That the SAG-AFTRA Health Plans Trustees Breached Their ERISA Fiduciary Duties in Failing to Disclose Material Information and Misleading Participants in connection with the Union's Collective Bargaining and Approval Processes

In Count II, Plaintiffs claim the SAG-AFTRA Health Plan Trustees breached their ERISA fiduciary duties by failing to disclose the potentially fatal funding circumstances and doomed state of the health benefit structure in connection with the Union's collective bargaining processes in 2019 and 2020. ¶¶ 20, 93-108. Further, Plaintiffs claim Defendants White, Rodriguez, McGuire, Hartley-Margolin, Pniewski, Brown and Powell materially misled the participants by accepting and approving inadequate funding terms, while acting as primary representatives of the Union in the Union's collective bargaining and approval processes in 2019 and 2020, without disclosing the material information. *Id.* ¶ 102.

Defendants argue that the SAG-AFTRA Health Plan Trustees were not subject to ERISA fiduciary duties as health plan trustees in the Union's collective bargaining activities, which Defendants assert "The 'Supreme Court long ago made clear … do not constitute plan management by the trustee of an ERISA welfare plan and, therefore, are not considered fiduciary acts." Defs.' Mem. at 15-16 (quoting *Hall v. Hill Refrigeration, Inc.*, 36 F. Supp. 2d 1185, 1189 (C.D. Cal. 1999)). Defendants also argue that the failure to disclose claim is implausible because Plaintiffs' allegations that "the withheld information resulted in losses to the Plan are so implausible that they would fail to state a fiduciary breach." Defs.' Mem at 17-18. Defendants' arguments are without merit.

### A.     Plaintiffs State a Cognizable ERISA Fiduciary Duty Breach Claim

An ERISA fiduciary "has an obligation to convey complete and accurate information material to the beneficiary's circumstances, even when a beneficiary has not specifically asked for the information." *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995); *Farr v. West Comm., Inc.*, 151 F.3d 908, 914 (9th Cir 1998) (failure to disclose potentially negative tax consequences participant might

17

face in electing early retirement option breached ERISA fiduciary duties). The fiduciary "duty to inform entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993); *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1054, (9th Cir. 2000); *Acosta v. Pacific Enters.*, 950 F.2d 611, 619 (9th Cir. 1991) ( "affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits.").

In *Farr*, the Ninth Circuit held that a failure by the plan and employer to inform employees about the particular consequences, known to the plan and employer, of lump sum retirement distributions constituted a breach of ERISA fiduciary duties. 151 F.3d at 915. A supplement to the SPD stated "all or part" of the distribution could be rolled over without current tax liability but failed to explain that only qualified portions could be rolled over tax-free, and who might be adversely affected by the limitation. *Id*. at 914. Company publications and an in-house television broadcast noted but did not elaborate on the potential adverse tax consequences. *Id*. The court concluded "although we have held that it is enough if an employee is alerted to recognize that curtain events or actions could trigger a loss of benefits, defendants failed to provide sufficiently detailed information to employees to alert them at the precise nature and likelihood of such a possibility." *Id*. at 915. "Defendants had an obligation to explain the nature of the potential problem and, in general terms, who might be negatively affected." *Id*. Citing *Varity*, the court concluded defendants' failure to inform Plaintiffs about the potential tax consequences constituted a breach of their fiduciary duties. *Id*.

In the present case, as finally disclosed in August 2020, the SAG-AFTRA Health Plan Trustees had been working nearly every day since mid-2018 to consider how to address the potentially fatal and widening structural imbalance between Plan costs and funding. The Health Plan Trustees unquestionably possessed the withheld

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

information.[12] In fact, the Trustees likely knew the nature of the Benefit Cuts at the time of the TV/Theatrical negotiation and approval process in 2020. This information was vitally important to the Plan participants and their representatives in the bargaining and approval processes.

Further, Health Plan Trustees White, Rodriguez, McGuire, Hartley-Margolin, Pniewski and Powell affirmatively undertook primary roles for the Union in the 2019-2020 Union collective bargaining processes and accepted and approved the terms of the Union's bargaining proposal packages and the ultimately bargained terms, without disclosing the material dooming structural imbalance or funding needs to sustain the benefit structure. Health Plan Trustee Brown voted as a Union National Board member to approve the agreements, without disclosing the material information to other members of the National Board.

The circumstances here are analogous to *Farr*. The vital information was known to the SAG Health Plan Trustees. The Trustees knew the participants and their representatives, some of whom were Health Plan Trustees, were making decisions in collective bargaining and approval concerning funding of the Health Plan based on the negotiated components of their compensation.

Defendants may argue, under *Bins*, the SAG-AFTRA Health Plan Trustees had no ERISA fiduciary disclosure obligation because the Benefit Cuts were not under "serious consideration" and the participants did not inquire whether benefit changes were in the offer. 220 F.3d 1042 (9th Cir. 2000). *Bins*, however, addressed a claim that the plan should have disclosed the coming beneficial change to him to inform his retirement-planning. By contrast, in the present case, the potentially fatal funding imbalance was certain and worsening. The SAG-AFTRA Health Plan Trustees were considering options to address the potentially fatal and widening imbalance. The

---

[12] If not, the failure to prudently inform themselves would in itself constitute a breach of fiduciary duty and the SAG-AFTRA Health Plan Trust Agreement.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

benefit structure was not sustainable under the operative collective bargaining agreements. The Plan and benefit funding depended almost entirely on the terms to be obtained in the Unions 2019 and 2020 collective bargaining processes, in which some of the Health Plan Trustees directly participated as representatives of the Union and participants.

Defendants' reliance on *Hall v. Hill Refrigeration, Inc.*, is misplaced. 36 F. Supp. 2d 1185 (C.D. Cal. 1999). *Hall* addressed actions by individuals with dual roles as plan trustees and representatives of the employers. *Id*. at 1187. The defendants in *Hall* were alleged to have changed the contribution rates set by the collective bargaining agreements without obtaining Union membership ratification required by the Union constitution. *Id*. at 1188. Such actions, the court concluded, were actions beyond the authority of the plan trustees and were not subject to ERISA fiduciary duties of plan trustees. *Id*. at 1190.

*Hall* did not address the issue of disclosure of plan-related material information in a Union or employer-related setting where the information was unquestionably material to the decisions of plan participants. In *Varity*, the Supreme Court held that the factual circumstances can require disclosures (and prohibit omissions) by a plan sponsor relating to known plan information in a business-related setting, to comply with the sponsor's ERISA fiduciary duties as plan administrator with knowledge and access as plan administration to the material information at issue, where the disclosures are material to actions by plan participants. *Varity*, 516 U.S. at 505-08. Defendants tacitly concede the Health Plan Trustees here were analogous to the employer in *Varity*, in implying the participants had a reasonable expectation the Health Plan Trustees would act consistent with their undisclosed knowledge concerning the Health Plan in representing the Union and participants in the collective bargaining and approval. Defs.' Mem. at 17-18.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

### B.   Plaintiffs' Disclosure Claim is Plausible

Defendants alternatively argue Plaintiffs' failure to disclose claim is not plausible because it is implausible that to infer disclosure would have led to a different funding outcome in the collective bargaining and approval process. *Id.* Defendants argue since some negotiators knew the information, the process was informed, and in any event, wage increase diversions would not have been approved by the membership. *Id.*

The Health Plan Trustees who knew told no one else. Defendants' self-serving assertion here that no different outcome would have obtained, is entitled to no weight at the pleading stage. Further, had the committees known, different actions would have been taken to prioritize funding. *Pizzella v. Vinoskey*, 409 F. Supp. 3d 473, 525 (W.D. Va. Aug. 2, 2019) ("[M]ore likely than not" trustee's failure to negotiate "caused the [plan] to sustain a definite, quantifiable loss" despite that "we will never know whether [seller] would have accepted the[] hypothetical offers"); *Murphy v. FedEx Nat'l LTL, Inc*., 582 F. Supp. 2d 1172, 1182 (E.D. Mo. 2008) (employer's misrepresentation prevented parties from "[]ever know[ing]" if plaintiff's request would have been approved).

## III.   SAG-AFTRA Health Plan Trustees Breached Their ERISA Fiduciary Duties by Imposing Discriminatory Benefit Cuts

In Count II, Plaintiffs assert the SAG-AFTRA Health Plan Trustees breached their ERISA fiduciary duties in plan administration by choosing and implementing age-discriminatory benefit changes as a means of financial plan management, exposing the plan to expense and liability, in breach of positive law and the governing plan documents. ¶¶ 109-36.

Defendants argue: the amendment to change the benefit structure was a "settlor," not fiduciary, action, and only ERISA fiduciaries are required to act in accordance with Plan documents (Defs.' Mem. at 13-15); participants had no rights to continued benefits based on continuing contributions (*id*. at 18-19); Plaintiffs'

ERISA claim is an improper attempt to sidestep the requirements of applicable anti-discrimination laws (*id*. at 19-23), and the Benefit Cuts do not improperly discriminate based on age (*id*. at 23-25). Defendants' arguments are without merit.

### A. Benefit Cuts as a Means of Financial Plan Management was a Fiduciary Function

As discussed above, by the Benefit Cuts, the SAG-AFTRA Health Plan Trustees chose and implemented major changes to the plan's benefit structure as a means of financial plan management to address a widening funding gap. Plan amendments to change benefits generally are "settlor" in nature. In the present case, however, the amendment and changes were the means chosen by the SAG-AFTRA Health Plan Trustees to address the widening structural imbalance between Plan costs and Plan funding. It ousted senior performers but kept their earnings-based plan funding. This was a choice in financial plan management. As discussed in Section II above, the Trustees' discretionary choice among options to amend the Plan to change the benefit structure to cut Plan costs was made in Plan "administration" subject to ERISA fiduciary duties. *See Waller v. Blue Cross*, 32 F.3d 1337 (9th Cir. 1994).

As ERISA fiduciaries, the SAG-AFTRA Health Plan Trustees were required, in choosing an option to address the funding imbalance, to act solely in the interests of its participants and their beneficiaries, with the skill, diligence, care and prudence of an expert and in accordance with governing plan documents. The SAG-AFTRA Health Plan documents require the Trustees to administer the Plan in compliance with applicable law, and prohibit discrimination against any participant in obtaining a Plan benefit. As discussed below, the age-based discrimination in the Benefit Cuts does not comply with applicable anti-discrimination laws or the Plan documents prohibiting discrimination. The Trustees' discretionary choice to implement this option in plan financial management was a breach of their ERISA fiduciary duty to comply with governing plan documents and exposed the Plan to expense and injury.

22

### B.   Plaintiffs' ERISA Claim Does Not Seek to Sidestep the Requirements of Anti-discrimination Laws

Count II is a claim under ERISA for *injury to the Plan* by the SAG-AFTRA Health Plan Trustees' choice to implement the Benefit Cuts as a means of financial management of the Plan's funding imbalance. By contrast, the positive anti-discrimination laws apply to the Plan but relate to individual claims of *injury by the plan*. Defendants effectively concede this, asserting Plaintiffs ERISA claim "would unfairly expose the Trustees to claims against them personally, when they would face no personal exposure to an ADEA claim." Defs.' Mem. at 22. The Trustees chose the Benefit Cuts as an option for plan financial management. At least 13 Plan participants have filed age discrimination claims with the EEOC relating to the Benefit Cuts. The Plan engaged counsel to defend the Benefit Cuts against the EEOC claims. The EEOC claims seek to hold *the plan* liable to the individuals. Plaintiffs' ERISA claim seeks remedies for injury to the Plan. The trustees are liable to the Plan under ERISA for failure to abide by the law and plan documents.

The ERISA cases cited by Defendants do not address a claim under ERISA for *injury to the plan* resulting from the trustees' failure to comply with the anti-discrimination laws and plan documents in selecting plan management options. Defs.' Mem. at 21-22. *Endries v. Bd. of Dirs. of the Motion Picture Indus. Health Plan* addressed a Covid-19 related modification of hours-based eligibility. 2020 U.S. Dist. LEXIS 199264 (C.D. Cal. Oct. 7, 2020). The court found the plaintiffs' claim relating to the plan documents to be unsupported. Likewise, in *Collins v. Manufacturers Hanover Trust*, the court rejected the ERISA claim by the participant seeking benefits because plaintiff conceded she had a full remedy under the relevant anti-discrimination laws. 542 F. Supp. 663, 672-73 (S.D.N.Y. 1982).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

### C.   Benefit Cuts Discriminate Based on Age in Violation of Governing Plan Documents

Defendants' argument that the *en masse* elimination of participants 65 and older while the plan continues to be funded by their earnings for work under Union is based on permissible "analytically distinct" factors of "pension" and "retiree" status (Defs.' Mem. at 23-25), ignores reality and the trustees' obvious intent to use these factors nominally as age proxies. Such a proxy game intended to target based on age is impermissible age-based discrimination in the present circumstances. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 612-13 (1993).

Defendants concede the Benefit Cuts were chosen by the Trustees to address the Plan's funding imbalance. Defs.' Mem. at 24-25. Employers are required to continue contributions based upon all earnings of participants from Union work under the Plan's operative collective bargaining agreements. Skaug Aff. Ex. C at Art. 5. The contracts require employers to contribute based on all earnings of all performers at the very same rate. By the Benefit Cuts, the Plan will go from a $81 million deficit for 2021 to surpluses.

The concepts of "pension" and "retiree" status here are mere proxies for the trustees' intent to target participants 65 and older. The residuals earnings of the performers are earnings from their work under the Union contracts. ¶¶ 123-25. Residuals earnings are compensation paid to performers for use of a theatrical motion picture, television program and commercials beyond the use covered by performer's initial compensation. *Id*. Residuals include payments made for free TV, basic cable, video/DVD, New Media and theatrical productions. *Id*. Residuals have historically been the subject of difficult fights and strikes to maintain and increase the important source of income. *Id*. According to SAG-AFTRA: "Oftentimes, residuals linked to the continued exhibition of Union projects are the 'long tail' of income for performers and their heirs." *Id*.  Residuals are a vital part of a member's earnings, continuing to the participant's heirs and beneficiaries even after death. *Id*. Likewise, pension status

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

in the present context differs materially from the conventional employer context. Performers can take a Union pension at age 55. Further, performers' earnings for Union work do not cease on taking a pension. As discussed above, their employers must contribute to the health plan based on residuals at the very same rate as sessional earnings.

None of the cases Defendants cite in support of "analytically distinct" pension or retiree status, is analogous. Defs.' Mem. at 23. *Carson v. Lake Cty.*, 865 F.3d 526, 535 (7th Cir. 2017), *Northwest Airlines Inc. v. Phillips,* 675 F.3d 1126, 1133 (8th Cir. 2012), *Harris v. Cty. of Orange*, 902 F.3d 1061, 1072 (9th Cir. 2018), and *Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 141 (2008), addressed traditional employment and retirement contexts. None addressed discrimination based on age among persons receiving compensation from employers for work.

Likewise, none of the cases Defendants cite regarding contributions on behalf of employees not receiving benefits, is analogous. *Walsh v. Schlecht* addressed a claim under the Labor Management Relations Act relating to a collective bargaining agreement's requirement for an employer to pay a benefit plan for the work of employees of a non-signatory subcontractor. 429 U.S. 401 (1977). *Phillips v. Alaska Hotel & Restaurant Employees Pension Fund* also addressed a claim under the LMRA relating the vesting of pension benefits. 944 F.2d 509 (9th Cir. 1991).

Further, 29 C.F.R. 1625.32 does not exempt the age-based discrimination here. The exemption by its express terms is to be "narrowly construed." 29 C.F.R. 1625.32(c). The exemption applies only to health benefits for former employees. *See id*. at App. Q&A7. *Fulghum v. Embarq Corp*, 785 F.3d 395 (10th Cir. 2015) and *Lefevre v. Niagra Mohawk Power Corp*., 610 F. Supp. 2d 212 (N.D.N.Y. 2009), cited by Defendants, addressed claims by former employees of the employers.

**IV.    Counts III and IV State Claims for Co-Fiduciary Liability**

Defendants do not argue Plaintiffs have failed to state Co-fiduciary liability claims in Counts III and IV in any respect other than Plaintiffs failed to allege a cognizable primary breach of fiduciary duty. Defs.' Mem. at 25. For the reasons discussed above, Plaintiffs have asserted cognizable breach claims on which the Co-fiduciary breach claims are based.

## <u>CONCLUSION</u>

In accordance with the foregoing, Plaintiffs respectfully submit Defendants' motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be denied.


DATED: June 1, 2021                    **Chimicles Schwartz Kriner**
                                       **& Donaldson-Smith LLP**


                                       By:   */s/ Steven A. Schwartz*
                                             Steven. A Schwartz (Admitted *Pro Hac Vice*)
                                             361 West Lancaster Avenue
                                             Haverford, PA 19041
                                             Tel.: 610-642-8500
                                             Fax: 610-649-3633
                                             steveschwartz@chimicles.com

                                             Robert J. Kriner, Jr. (Admitted *Pro Hac Vice*)
                                             Emily L. Skaug (Admitted *Pro Hac Vice*)
                                             **Chimicles Schwartz Kriner**
                                             **& Donaldson-Smith LLP**
                                             2711 Centerville Road, Suite 201
                                             Wilmington, DE 19808
                                             rjk@chimicles.com
                                             els@chimicles.com

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Neville L. Johnson
Douglas L. Johnson
**Johnson & Johnson LLP**
439 N. Canon Drive, Suite 200
Beverly Hills, CA 90210
Tel.: 310-9751080
Fax.:310-975-1095
njohnson@jjllplaw.com
djohnson@jjllplaw.com


*and*


Edward Siedle (Admitted *Pro Hac Vice*)
**Law Offices of Edward Siedle**
17789 Fieldbrook Circle West
Boca Raton, FL 33496
Tel.: 561-703-5958
esiedle@aol.com


*Attorneys for Plaintiffs and the Classes*

27