Myron D. Rumeld*
mrumeld@proskauer.com
Neil V. Shah*
nshah@proskauer.com
Anastasia S. Gellman*
agellman@proskauer.com
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel.: 212.969.3000
Fax: 212.969.2900

Scott P. Cooper (SBN 96905)
scooper@proskauer.com
Jennifer L. Jones (SBN 284624)
jljones@proskauer.com
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Tel.: 310.557.2900
Fax: 310.557.2193

Jani K. Rachelson*
jrachelson@cwsny.com
Evan R. Hudson-Plush*
ehudson-plush@cwsny.com
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, NY 10022-4869
Tel.: 212.563.4100
Fax: 646.473.8254

* *admitted pro hac vice*

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| EDWARD ASNER, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>THE SAG-AFTRA HEALTH FUND, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-10914-CAS-JEM<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: July 19, 2021<br>Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Hon. Christina A. Snyder<br>Action Filed: December 1, 2020 |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ....................................................................................................3

    I.     PLAINTIFFS FAIL TO STATE A FIDUCIARY BREACH
          CLAIM IN COUNT I REGARDING THE PLAN MERGER ............3

          A.    The Decision to Merge the SAG and AFTRA Plans Is
                a Settlor Function Outside the Scope of Fiduciary
                Responsibility.......................................................................3

                1.    The Trust Agreement Does Not Support a Fiduciary
                        Breach Claim ............................................................4

                2.    The Alleged Subcomponents of the Merger Decision-
                        Making Process Are Indistinct from the Merger Decision
                        Itself ........................................................................5

                3.    The Merger Decision Did Not Become a Fiduciary
                        Function Because of Statements Made Thereafter..........9

           B.    Plaintiffs Fail to Show Their Merger Claim Is
                 Plausible ............................................................................10

    II.    PLAINTIFFS FAIL TO STATE A FIDUCIARY BREACH
          CLAIM IN COUNT II REGARDING THE 2020 PLAN
          AMENDMENTS ...................................................................11

           A.    The Decision to Amend the Plan to Change Benefit
                 Eligibility Is a Settlor Function Outside the Scope of
                 Fiduciary Responsibility .....................................................12

           B.    Plaintiffs Fail to Justify Their Attempt to Use ERISA's
                 Fiduciary Rules to Circumvent the Age Discrimination
                 Laws ..................................................................................13

           C.    Plaintiffs Fail to State a Claim that the 2020 Plan
                 Amendments Violate the Age Discrimination Laws ................14

    III.    PLAINTIFFS FAIL TO STATE A CLAIM IN COUNT II
          REGARDING THE FAILURE TO DISCLOSE

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INFORMATION TO AID IN COLLECTIVE BARGAINING
NEGOTIATIONS ................................................................................17

    A.    Collective Bargaining Is Not a Fiduciary Function..................18

    B.    Plaintiffs Fail to Show Their Failure-to-Disclose Claim
        Is Plausible ...............................................................................20

CONCLUSION ..............................................................................................22

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Acosta v. Pac. Enters.*,
   950 F.2d 611 (9th Cir. 1991) .......................................................................... 20

*Barker v. Am. Mobil Power Corp.*,
   64 F.3d 1397 (9th Cir. 1995) .......................................................................... 20

*Beck v. PACE Int'l Union*,
   427 F.3d 668 (9th Cir. 2005), *rev'd in part*, 551 U.S. 96 (2007) ................................. 6

*Beck v. PACE Int'l Union*,
   551 U.S. 96 (2007) ............................................................................... 3, 6, 7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 21

*Bins v. Exxon Co. U.S.A.*,
   220 F.3d 1042 (9th Cir. 2000) ........................................................................ 20

*Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*,
   12 F.3d 1292 (3d Cir. 1993) ............................................................................19

*Carson v. Lake County*,
   865 F.3d 526 (7th Cir. 2017) ..........................................................................14

*Crowhurst v. Cal. Inst. of Tech.*,
   No. CV 96-5433 RAP (SHX), 1999 WL 1027033 (C.D. Cal. July 1, 1999),
   *aff'd*, 11 F. App'x 827 (9th Cir. 2001) ...........................................................11

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995).............................................................................. 8, 10, 13

*Farr v. U.S. West Communications, Inc.*,
   151 F.3d 908 (9th Cir. 1998) .......................................................................... 19

*Hall v. Hill Refrigeration, Inc.*,
   36 F. Supp. 2d 1185 (C.D. Cal. 1999) ............................................................ 19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

*Harris v. County of Orange*,
    902 F.3d 1061 (9th Cir. 2018) ................................................................ 14, 16

*Hazen Paper Co. v. Biggins*,
    507 U.S. 604 (1993) .................................................................................... 15

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) ........................................................................... 3, 13, 17

*Johnson v. Fed. Home Loan Mortg. Corp.*,
    793 F.3d 1005 (9th Cir. 2015) ..................................................................... 10

*Ky. Ret. Sys. v. EEOC*,
    554 U.S. 135 (2008) .................................................................................... 15

*Malia v. Gen. Elec. Co.*,
    23 F.3d 828 (3d Cir. 1994) .......................................................................... 3, 8

*Murphy v. FedEx, Nat'l LTL, Inc.*,
    582 F. Supp. 2d 1172 (E.D. Mo. 2008) ....................................................... 21

*NLRB v. Amax Coal Co.*,
    453 U.S. 322 (1981) .................................................................................... 19

*Northwest Airlines, Inc. v. Phillips*,
    675 F.3d 1126 (8th Cir. 2012) ..................................................................... 14

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ............................................................. 7, 8, 10

*PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ....................................................................... 11

*Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*,
    944 F.2d 509 (9th Cir. 1991) ....................................................................... 17

*Pizzella v. Vinoskey*,
    409 F. Supp. 3d 473 (W.D. Va. 2019) ......................................................... 21

*Ronches v. Dickerson Employee Benefits, Inc.*,
    No. CV 09-04279 MMM, 2009 WL 10669571 (C.D. Cal. Oct. 30, 2009) .................. 4

iv

*Scardelletti v. Bobo*,
   897 F. Supp. 913 (D. Md. 1995) .......................................................................7

*Scardelletti v. Bobo*,
   No. JFM-95-CV-5, 1997 WL 33446689 (D. Md. Sept. 8, 1997) .................7

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) .................................................................. 9, 10, 19, 20

*Vaughn v. Air Line Pilots Ass'n, Int'l*,
   604 F.3d 703 (2d Cir. 2010) .................................................................... 21

*Waller v. Blue Cross of California*,
   32 F.3d 1337 (9th Cir. 1994) ............................................................6, 12, 13

*Walsh v. Schlecht*,
   429 U.S. 401(1977) .................................................................................17

**STATUTES**

Age Discrimination in Employment Act (ADEA) ...................................... 13, 14, 15, 16

Employee Retirement Income Security Act (ERISA) ........................................... passim

ERISA § 208, 29 U.S.C. § 1058 ........................................................................ 8

ERISA § 404(a), 29 USC § 1104(a) ............................................................... 20

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ...................................... 11

ERISA § 4231(b)(2), 29 U.S.C. § 1411(b)(2) .............................................. 8

Labor Management Relations Act (LMRA) ................................................. 17

**OTHER AUTHORITIES**

29 C.F.R. § 1625.32(b) ............................................................................. 15, 16

42 C.F.R. § 411.104(f) .................................................................................16

DOL Field Assistance Bulletin 2002-2 ..........................................................4

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

1

## **PRELIMINARY STATEMENT**

2       Plaintiffs' opposition brief[1] fails to provide any meaningful basis for

3   distinguishing the multitude of controlling authorities supporting the conclusion that

4   the decision to merge the SAG and AFTRA health plans, and the decision to amend the

5   merged Plan to change benefit eligibility, were settlor/non-fiduciary decisions that are

6   not actionable under ERISA.  Plaintiffs' purported construction of the SAG Plan's trust

7   agreement to impose fiduciary duties on the merger decision cannot undo the force of

8   these judicial pronouncements.  In any event, the isolated provisions cited by Plaintiffs

9   that identify merger decisions as among the delineated powers of the SAG Trustees, or

10  state generally that the SAG Trustees must act prudently when performing their

11  fiduciary duties, are not reasonably construed to superimpose fiduciary responsibility

12  on settlor decisions.  Nor can Plaintiffs' allegations about the SAG Trustees' financial

13  evaluation of the impact of the merger, or their subsequent statements about the

14  merger, change the fact that the merger decision itself was a settlor function.

15      Likewise, the SAG-AFTRA Trustees did not assume fiduciary responsibilities

16  with respect to the 2020 Plan Amendments merely because the changes were adopted

17  to address the Plan's financial shortfall.  There is no legal support for the creation of

18  such an exception to the settlor-fiduciary distinction.  Moreover, it would be absurd to

19  conclude that, by amending the Plan to improve the Plan's financial condition, the Plan

20  Trustees incurred fiduciary exposure for what Plaintiffs concede would otherwise have

21  been a settlor function if made for any other reason.

22      Plaintiffs have also failed to provide a plausible factual basis for their Plan

23  merger and amendment claims, even if ERISA had something to say about them.

24  Notwithstanding Plaintiffs' belated effort to recharacterize their merger claim, a plain

25

26  [1] Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants'
    Motion to Dismiss First Amended Complaint (Dkt. 50) is referred to herein as "Opp."

27  and Defendants' Memorandum of Points and Authorities in Support of their Motion to
    Dismiss First Amended Complaint (Dkt. 46) is referred to herein as "Mot."  Any

28  capitalized terms used herein are defined in Defendants' moving brief.

1  reading of the complaint confirms that the claim is based on the mistaken assumption

2  that the SAG Plan was in better financial condition than the AFTRA Plan prior to the

3  merger—an assumption that is contradicted by the financial reports on which the

4  complaint relies.  And Plaintiffs' new focus on a funding imbalance that allegedly

5  became apparent *two years after* the merger decision does not support a reasonable

6  inference that the decision was imprudent at the time it was made.

7         Plaintiffs' effort to justify proceeding with an age discrimination claim under

8  ERISA, rather than under the age discrimination laws that they claim were violated,

9  fares no better.  They contend that ERISA affords them an independent cause of action

10 to hold the SAG-AFTRA Trustees liable for "injury to the Plan."  But they fail to allege

11 any basis for concluding that the Plan, as opposed to the individual participants they

12 represent, has been harmed by benefit cuts designed to restore the Plan's financial well-

13 being.  In any event, Plaintiffs have failed to address the fundamental flaw in their age

14 discrimination claim: that the challenged amendments distinguish among participants,

15 not based on age, but rather based on their status as Medicare-eligible retirees—a

16 distinction that has received explicit regulatory and case law approval.

17        Plaintiffs' effort to hold the SAG-AFTRA Trustees liable as fiduciaries for

18 allegedly failing to disclose information to aid in the Union's negotiation of collective

19 bargaining agreements fails for similar reasons.  Plaintiffs cite authority for the

20 proposition that the Trustees have a fiduciary responsibility to provide truthful

21 information to participants in connection with plan administration.  But collective

22 bargaining is not plan administration, and Plaintiffs' claim thus falls within the realm of

23 the labor laws, not ERISA.  The nondisclosure claim in any event is dismissible for

24 failure to satisfy fundamental pleading requirements, because it remains premised on

25 the nonsensical notion that the Union negotiating committee was deprived of

26 information concerning the financial condition of the Plan that Plaintiffs concede was

27 in the possession of the lead Union negotiators.

28

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

Plaintiffs ultimately revert back to the theme of their complaint—that they deserve better treatment because the Plan receives contributions based on their earnings.  But this view finds no support in ERISA or relevant case law.  The reality is that welfare plan participants do not "accrue" a right to benefits based on contributions made with respect to their work.  Plaintiffs thus cannot be heard to complain when, in an effort to preserve the Plan's ability to maintain a reasonable level of benefits for non-retired participants, the Plan Trustees required retired participants to make use of their available Medicare benefits in lieu of continuing benefits under the Plan.

## ARGUMENT

## I.   PLAINTIFFS FAIL TO STATE A FIDUCIARY BREACH CLAIM IN COUNT I REGARDING THE PLAN MERGER

Plaintiffs have provided no meaningful basis to dispute that their merger claim must be dismissed because: the June 2016 decision to merge the SAG and AFTRA plans is not actionable as a fiduciary breach; and, even if it were, Plaintiffs' complaint does not plausibly allege any grounds for finding that decision to have been imprudent.

### A.    The Decision to Merge the SAG and AFTRA Plans Is a Settlor Function Outside the Scope of Fiduciary Responsibility

Plaintiffs effectively concede that the "decision to pursue a potential merger was a [settlor/non-fiduciary] decision concerning plan design" under the controlling authorities.  Opp. at 11.  Indeed, they could not argue otherwise since the Supreme Court has recognized that settlor/non-fiduciary decisions "regarding the form or structure of a plan" include the "decision to merge plans."  *Beck v. PACE Int'l Union*, 551 U.S. 96, 101-02 (2007) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) and *Malia v. Gen. Elec. Co.*, 23 F.3d 828, 833 (3d Cir. 1994)).  Plaintiffs nonetheless try to shoehorn in a fiduciary challenge to the decision to merge the SAG and AFTRA plans by: (1) citing to provisions of the SAG Plan's trust agreement that supposedly converted the merger decision into a fiduciary function; (2) breaking down

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

the merger decision-making process into subcomponents that they contend are fiduciary in nature; and (3) alluding to statements made *after* the merger decision that allegedly were misleading or false.  Opp. at 11, 14.  None of these arguments saves the claims asserted in Count I from dismissal.

    *1.*    *The Trust Agreement Does Not Support a Fiduciary Breach Claim*

   Plaintiffs have not cited a single case standing for the proposition that the terms of a plan's trust agreement can override the effect of Supreme Court authority on what types of activities are considered settlor functions outside the scope of ERISA's fiduciary rules.  To the contrary, Plaintiffs acknowledge that, in *Ronches v. Dickerson Employee Benefits, Inc.*, No. CV 09-04279 MMM (PJWx), 2009 WL 10669571, at *14 (C.D. Cal. Oct. 30, 2009), this Court "express[ed] doubt that trust documents could alter ERISA's definition of fiduciary."  Opp. at 16.  In lieu of case law, Plaintiffs rely entirely upon DOL Field Assistance Bulletin 2002-2; but, as this Court has recognized, the "Department of Labor cannot, in an advisory bulletin or otherwise, overturn Supreme Court precedent."  *Ronches*, 2009 WL 10669571, at *14 n.82.

   In any event, the SAG Plan's trust agreement does not assign fiduciary duties to the merger decision.  Plaintiffs rely on two sections of Article IV: (i) Section 1, which lists the decision to merge as one of the powers the SAG Trustees are "authorized and empowered" to exercise; and (ii) Section 3, which recites the ERISA fiduciary rules that apply when "the [SAG] Plan Trustees and any other *fiduciary* [are] discharg[ing] their respective *duties* set forth in the Health Plan . . . ."  Dkt. 52-2 at Art. IV §§ 1, 3 (emphases added).  Given that the ability to merge plans is not a "duty" that the SAG Trustees must perform, but rather is a "power" that they possess, *see id.* § 1, it makes little sense to construe Section 3 as applying fiduciary rules to the merger decision or to any other exercise of settlor powers.  Rather, Section 3 is plainly intended merely to confirm that, when the SAG Trustees are discharging their fiduciary duties, they must adhere to ERISA's rules governing fiduciary conduct.  Mot. at 12-13.

- 4 -

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

With respect to Section 1, Plaintiffs argue that the use of the generic term "administration" in the introductory sentence means that all of the powers listed are intended to be fiduciary functions, presumably since ERISA's definition of "fiduciary" refers to plan administration.  But there is no basis for this mental leap, particularly when the delineated powers include powers that are clearly settlor in nature.  For example, Section 1 includes the authority to do all things necessary for the "*establishment*, maintenance and administration of the Health Plan," including the power to set forth "welfare eligibilities and benefits."  Dkt. 52-2 at Art. IV § 1(r) (emphasis added).  The only reasonable construction of Section 1 is that it is intended to list all the powers of the SAG Trustees, and not to impose fiduciary duties on settlor functions via a passing reference to the word "administration."

> 2. *The Alleged Subcomponents of the Merger Decision-Making Process Are Indistinct from the Merger Decision Itself*

Without debating that the decision to merge the SAG and AFTRA plans was a settlor decision, Plaintiffs contend that they can still salvage their merger claim by attributing fiduciary responsibility to certain aspects of the decision-making process associated with the merger: (i) the SAG Trustees' "process to evaluate the impact of a merger" on funding and future benefits before deciding to merge the plans; and (ii) the SAG Trustees' "choice following the evaluation to proceed with a merger rather than remain as a stand-alone plan."  Opp. at 11.  But there is no basis for distinguishing these subcomponents of the merger decision-making process from the merger decision itself.  Indeed, the complaint concedes that these actions are only being challenged as part and parcel of the merger decision.  *See, e.g.*, FAC ¶¶ 19, 27, 81, 165 (generally alleging that the SAG Trustees approved the merger, either without conducting a sufficiently diligent pre-merger investigation into how it would affect future benefits or by disregarding the results of that investigation).

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

Not surprisingly, Plaintiffs' effort to create a fiduciary duty out of subcomponent aspects of a settlor decision finds no support in the case law.  Plaintiffs rely primarily on a distinction drawn by the Ninth Circuit in *Waller v. Blue Cross of California*, 32 F.3d 1337 (9th Cir. 1994) (cited at Opp. at 11-12), between an impermissible attack on a settlor decision and an attack on the "*implementation* of the decision" after it has been made, which may involve independent fiduciary acts.  *Id.* at 1342-43.  But *Waller* is inapposite here.  To begin with, it is illogical to say that the evaluation conducted by the SAG Trustees *before* the merger decision was made somehow *implements* that decision.  Furthermore, the post-decision activity that was at issue in *Waller*—the decision to choose a certain annuity provider to cover the plan's vested benefits—was completely disconnected from, and had no impact on, the plan sponsor's decision to terminate its pension plan.  *Id.* at 1339, 1342.  The Court reasoned that Congress specifically intended the selection of annuity providers as part of a pension plan termination to be subject to ERISA's fiduciary rules and emphasized that allowing a fiduciary breach claim to challenge that decision would not amount to an attack on the "*decision* to terminate."  *Id.* at 1342-44.  By contrast, in this case, Plaintiffs' Count I directly targets the decision to merge.  *See, e.g.*, FAC ¶¶ 162, 165.

Similarly, in *Beck v. PACE Int'l Union*, 427 F.3d 668 (9th Cir. 2005), *rev'd in part*, 551 U.S. 96 (2007) (cited at Opp. at 12), the Ninth Circuit affirmed a ruling that the plan sponsor committed a fiduciary breach by purchasing annuities as a means to implement its decision to terminate a single employer pension plan, without considering a proposal to merge the plan with a multiemployer plan.  *Id.* at 673-74, 679.  Because the Supreme Court reversed on the ground that "merger is not a permissible form of termination," it did not decide whether implementation of a settlor decision can be subject to fiduciary obligations.  *Beck*, 551 U.S. at 110.  Nevertheless, the Court noted that it is "well established" that the "decision *whether* to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations" and that

the "decision to merge plans" normally would be considered a settlor function as well if it were not being presented in this case as a "*method of terminating*" a plan. *Id.* at 101-02.  Here, the unique circumstances of *Beck* are not present—the merger of the SAG and AFTRA plans *is* the settlor decision being challenged by Plaintiffs; there is no challenge to the method of implementing the settlor decision.

The Ninth Circuit's decision in *Paulsen v. CNF Inc.*, 559 F.3d 1061 (9th Cir. 2009) (cited at Opp. at 12), likewise supports the position of Defendants, not Plaintiffs. It instructs that a plan sponsor's decision to change the structure of a plan and transfer participants into a new plan is unassailable even if the plan sponsor knows that doing so would negatively affect future benefits.  In that case, the plaintiffs claimed that CNF committed a fiduciary breach when it spun off a new company, CFC, and caused some of the original CNF pension plan participants to become participants in a new CFC pension plan, even though it knew that the new CFC pension plan "was unlikely to be able to fulfill" its pension obligations due to "inadequate funding." *Id.* at 1065-67, 1069.  Indeed, about six years after the transfer, the new CFC pension plan was distress terminated due to underfunding. *Id.* at 1066, 1068.  The Ninth Circuit nevertheless affirmed the dismissal of the fiduciary breach claim because the participants would not be able to "establish that CNF breached a fiduciary duty in deciding to conduct the plan spinoff," since that decision is "not a fiduciary act." *Id.* at 1076.

Apart from their misplaced reliance on the above controlling authorities,[2] Plaintiffs ignore an on-point Third Circuit ruling that the Supreme Court cited

---

[2] Plaintiffs also rely on a District of Maryland case that has no relevance here because it did not concern a fiduciary breach claim asserted against the plan sponsor responsible for the settlor decision in question.  *Scardelletti v. Bobo*, 897 F. Supp. 913 (D. Md. 1995) (cited at Opp. at 12-13).  Rather, the claim was against those responsible for making non-binding recommendations to the plan sponsor.  *See id.* at 915-18; *see also Scardelletti v. Bobo*, No. JFM-95-CV-5, 1997 WL 33446689, at *3-4 (D. Md. Sept. 8, 1997) (clarifying that its decision comports with the unfolding Supreme Court precedent on settlor functions because the fiduciary breach claim was not directed

- 7 -

approvingly in *Beck*. In *Malia*, the Court held that a plan sponsor has no fiduciary duty to conduct a pre-merger independent review because "[e]fforts . . . to merge two pension plans do not invoke the fiduciary duty provisions of ERISA." 23 F.3d at 833. The merger in question was between the GE and RCA plans, after GE acquired RCA. *Id.* at 829-30. Reminiscent of Plaintiffs' allegations here, participants of the former RCA plan inaccurately believed that their plan was the "richer" of the two at the time of the merger and, thus, that the other plan would be "captur[ing]" their surplus assets. *Id.* at 830. Also reminiscent of Plaintiffs' allegations here, the former RCA participants alleged that GE breached its fiduciary duties by, among other things, failing "to appoint an independent representative of the pension plan participants to review and approve the plan merger" before the decision was made. *Id.* In rejecting the claim, the *Malia* court pointed out that the "only" fiduciary duties that would apply "under the circumstances of a pension plan merger" are "the anti-dilution obligations imposed by § 1058." *Id.* at 833; *see also* ERISA § 208, 29 U.S.C. § 1058 (precluding pension plans from merging or transferring assets to another pension plan if doing so would reduce participants' accrued benefits); ERISA § 4231(b)(2), 29 U.S.C. § 1411(b)(2) (same for multiemployer pension plans). Notably, ERISA does not impose any corresponding anti-dilution obligations in the context of welfare plans, undoubtedly because the statute "does not create any substantive entitlement to employer-provided health benefits" and, thus, health benefits may be reduced "for any reason at any time." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *see also* Mot. at 5, 19.

In sum, there is no avoiding the settlor/non-fiduciary nature of the merger decision by claiming that the SAG Trustees failed to adequately investigate potential negative impacts of the decision before it was made, or even by claiming that they were aware of potential negative impacts before the decision was made.

against the entity with "the authority to amend" and who would be "immune from suit for breach of fiduciary duty").

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

3. *The Merger Decision Did Not Become a Fiduciary Function Because of Statements Made Thereafter*

Plaintiffs also cannot mount a fiduciary challenge to the settlor/non-fiduciary merger decision by referring to allegedly false statements by the Union's National Executive Director, Defendant David White, that the recently-approved merger would "strengthen the overall financial health of the plan while ensuring comprehensive benefits for all participants." Opp. at 5, 13-14; *see also* FAC ¶¶ 68, 70-71.[3]  As a preliminary matter, while Plaintiffs attempt to characterize the statements as having occurred "prior to the merger" (Opp. at 14), their complaint makes clear that the statements were made *after* the decision that Count I seeks to challenge—the SAG Trustees' June 2016 vote to approve the merger.  *See* FAC ¶¶ 68, 71.

Moreover, Count I does not purport to state a fiduciary breach claim based on Mr. White's statements, let alone attribute any harm to those statements.  *See* FAC ¶¶ 160-67.  Acknowledging as much, Plaintiffs argue that Count I can be interpreted to claim that the SAG Trustees "chose to proceed with the merger" despite the fact that Mr. White's statements allegedly were not true.  Opp. at 14.  But even as so recast, this claim is still directed at the merger decision itself, which as stated above, can be made for any reason—even an allegedly inaccurate one.

Plaintiffs' effort to invoke *Varity Corp. v. Howe*, 516 U.S. 489 (1996) (cited at Opp. at 13) as support is therefore misplaced.  In *Varity*, the plaintiffs were targeting the deceptive statements themselves—*i.e.*, claiming that they were "tricked" into voluntarily transferring out of their old welfare benefit plan into a new one that was destined to fail.  *See* 516 U.S. at 492-94.  The Court therefore concluded that it was appropriate to provide a remedy for the deceptive statements that caused the plaintiffs to change plans.  But there was never any question that the plan sponsor could have

---

[3] Although not argued for purposes of this motion, Defendants reserve the right to contend that Mr. White's statements were made in his capacity as the Union's National Executive Director and, as such, cannot support a fiduciary breach claim under ERISA.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

involuntarily transferred the participants into the new plan or terminated either plan at any time without being subject to fiduciary scrutiny. *See id.* at 505 (citing *Curtiss-Wright Corp.* and distinguishing the statements made from settlor decisions to amend and terminate, which would be non-fiduciary). Here, where the settlor decision is the target of the challenge, there can be no basis for a claim.

In short, Plaintiffs cannot escape the conclusion that the decision to merge the SAG and AFTRA plans was a settlor function and, as such, is not assailable under ERISA' fiduciary rules.

### B.      Plaintiffs Fail to Show Their Merger Claim Is Plausible

Plaintiffs do not oppose Defendants' Request for Judicial Notice (Dkt. 48), which attaches the Form 5500s that are cited in the complaint and that show—contrary to Plaintiffs' allegations—that the SAG Plan was financially weaker than the AFTRA Plan prior to the merger. Mot. at 3-4.[4]  Plaintiffs instead contend now that their claim challenging the prudence of the SAG Trustees' merger decision was not based on allegations concerning the relative financial conditions of the plans before the merger; rather, it is based on allegations concerning an unspecified "structural imbalance" that developed "shortly after the merger." Opp. at 16.

Plaintiffs' attempt to recast their merger claim in this way cannot be reconciled with the allegations of the complaint.[5]  Nor can it be squared with the fact that Plaintiffs have

---

[4] Contrary to Plaintiffs' contentions, there is no factual dispute concerning the "relative financial metrics" of the two plans (Opp. at 16) because the only factual allegations on this topic contradict their source documents and are properly disregarded. *See, e.g.*, *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015) ("we need not accept as true allegations contradicting documents that are referenced in the complaint"); *Paulsen*, 559 F.3d at 1071 (same).

[5] The complaint explicitly alleges that "you cannot merge a rich plan (SAG) with a relatively poor plan (AFTRA)" (FAC ¶ 56); compares the financial statements attached to the 2016 Form 5500 filings of the SAG and AFTRA plans to infer—incorrectly—that the SAG Plan was in a stronger financial position (FAC ¶ 72); and repeatedly discusses the allegedly higher employer contribution levels in the SAG Plan (FAC ¶¶ 73, 82).

- 10 -

asserted this claim only against the former SAG (and not AFTRA) Trustees and only on behalf of former SAG (and not AFTRA) Plan participants, *see, e.g.*, FAC ¶¶ 19, 53, 83, 167, which would make sense only if the claim were grounded in the belief that the merger was imprudent because the AFTRA Plan was financially weaker.  In any event, the newly-minted version of Plaintiffs' merger claim is just as implausible as the original version.  At most, the complaint alleges that the Trustees became aware of a funding imbalance two years *after* the merger was approved.  *See, e.g.*, FAC ¶ 79 (alleging the Trustees knew the Plan had inadequate funding to sustain benefits by "mid-2018"); *cf.* FAC ¶ 68 (alleging the merger was approved in "early June 2016").  Such after-the-fact developments cannot give rise to a reasonable inference that it was imprudent to decide to merge the SAG and AFTRA plans back in mid-2016.  *See, e.g.*, ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) (prudence measured under the "circumstances then prevailing"); *PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan  v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 713, 716 (2d Cir. 2013) (dismissing fiduciary breach claim as implausible because it was not "based upon information available to the fiduciary at the time" but instead used the "vantage point of hindsight"); *Crowhurst v. Cal. Inst. of Tech.*, No. CV 96-5433 RAP (SHX), 1999 WL 1027033, at *14 (C.D. Cal. July 1, 1999), *aff'd*, 11 F. App'x 827 (9th Cir. 2001) ("ERISA measures the prudence of a fiduciary in light of the circumstances then prevailing, and not with the benefit of hindsight.").

In short, without Plaintiffs' unwarranted assumptions about the facts that existed prior to the merger, their complaint does not support a reasonable inference that it was imprudent for the SAG Trustees to decide to merge the SAG and AFTRA plans.

## II.   PLAINTIFFS FAIL TO STATE A FIDUCIARY BREACH CLAIM IN COUNT II REGARDING THE 2020 PLAN AMENDMENTS

As is true for the merger claim, Plaintiffs' opposition brief fails to provide any meaningful basis to dispute that the decision to amend the plan was not fiduciary in

nature.  It also fails to state a viable claim for age discrimination, under either ERISA (where they are not properly asserted) or the age discrimination laws.

### A. The Decision to Amend the Plan to Change Benefit Eligibility Is a Settlor Function Outside the Scope of Fiduciary Responsibility

In the face of clear and abundant controlling authority (Mot. at 8-11, 13-14), Plaintiffs concede that the decision to amend a plan to change benefits is "settlor" in nature and, as such, is not subject to ERISA's fiduciary rules.  Opp. at 22.[6]  Plaintiffs nonetheless argue that the distinction between settlor and fiduciary functions does not apply when the plan amendments changing benefits were chosen as a means to address a "structural imbalance between Plan costs and Plan funding."  Opp. at 22.  Given that there is no such exception to the settlor-fiduciary distinction, Plaintiffs' Count II challenging the SAG-AFTRA Trustees' approval of the 2020 Plan Amendments must be dismissed as a matter of law.

Notably, Plaintiffs do not cite a single case that has made a distinction between plan amendments adopted to address funding imbalances and plan amendments adopted for other reasons.  Instead, Plaintiffs rely exclusively on *Waller*, which, as discussed above, distinguished only between an impermissible attack on the settlor decision to terminate a pension plan and a permissible attack on the independent choice of annuity providers to implement the termination decision after it was made.  *See* 32 F.3d at 1342-44.  Since *Waller* acknowledges that the settlor decision itself is immune from challenge under ERISA, *id.* at 1342, the case provides no support for the creation of the type of exception that Plaintiffs propose.

Moreover, the Supreme Court has already foreclosed the possibility of challenging a settlor decision to amend a plan just because the decision was made to

[6] Plaintiffs do not appear to dispute that, if the SAG-AFTRA Trustees were not functioning as fiduciaries in amending the Plan, then the ERISA fiduciary duty to comply with the plan documents could not possibly apply.  Mot. at 14-15; Opp. at 22.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

address an "imbalance between Plan costs and Plan funding" (Opp. at 22).  *See Curtiss-Wright Corp.*, 514 U.S. at 75, 78 (finding no cognizable ERISA claim based on a plan amendment terminating post-retirement health benefits that was "presumably [adopted] due to the rising cost of health care" and noting that welfare plan benefits may be reduced "for any reason").  Quite simply, the plan sponsor's motivation for amending a plan is irrelevant to the fact that the "act of amending" is non-fiduciary.  *Hughes Aircraft Co.*, 525 U.S. at 444.  It is likewise irrelevant whether the plan sponsor could have addressed a "funding imbalance" in other ways besides amending the plan.  Whether or not other choices were available, the decision to amend a plan's benefit provisions remains a settlor function.

## B. Plaintiffs Fail to Justify Their Attempt to Use ERISA's Fiduciary Rules to Circumvent the Age Discrimination Laws

Plaintiffs do not dispute that it is inappropriate to proceed with ERISA fiduciary breach claims premised on violations of age discrimination laws such as the ADEA when those other laws were intended to redress and provide an adequate remedy for the alleged age discrimination.  Mot. at 20-23; Opp. at 23.  Rather, Plaintiffs argue now that their resort to ERISA is necessary in this case because ADEA claims alone will not adequately remedy a supposed "injury to the Plan" that has resulted from the 2020 Plan Amendments.  Opp. at 23.  Plaintiffs do not specify, however, what "injury to the Plan" could possibly have resulted from making cost-saving changes.[7]  To the contrary, Plaintiffs assert that, because of the 2020 Plan Amendments, "the Plan will go from a $81 million deficit for 2021 to surpluses."  Opp. at 24.  Indeed, as noted in Defendants' moving brief, reducing health benefits for participants who are eligible for Medicare coverage has only operated to preserve the long-term health of the Plan.  Mot. at 24-25.

---

[7] While Plaintiffs' complaint alleges in conclusory fashion that the Plan has "suffered losses" from the 2020 Plan Amendments that they seek to restore, FAC ¶¶ 177, 194(B), it is devoid of any specific allegations as to what those losses might be that are distinct from individual injuries.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

Absent any plausible injury to the Plan, there is no justification for Plaintiffs' attempt to assert their ADEA claims as ERISA claims.

**C.      Plaintiffs Fail to State a Claim that the 2020 Plan Amendments Violate the Age Discrimination Laws**

Plaintiffs do not dispute that the 2020 Plan Amendments are based on pension and retiree status, but instead claim that the SAG-AFTRA Trustees' intent was to use these characteristics as a "proxy" for age.  Opp. at 24.  The case law cited in Defendants' moving brief, however, authorizes precisely these types of distinctions.  Mot. at 23. Plaintiffs' only attempt at distinguishing these cases is to say that they "addressed traditional employment and retirement contexts."  Opp. at 25.  This explanation is irrelevant and does not serve as a basis for discounting the specific holdings of these cases that distinctions based on pension and retirement status are not age discriminatory.  *See, e.g.*, *Harris v. County of Orange*, 902 F.3d 1061, 1070, 1072 (9th Cir. 2018) (holding that elimination of a retirement premium subsidy and reduction of a grant benefit when a retiree became eligible for Medicare at age 65 is not age discriminatory because retiree status is analytically distinct from age and an employer "may treat retirees *as a group* differently, with regard to medical benefits, than employees *as a group*"); *Carson v. Lake County*, 865 F.3d 526, 529 (7th Cir. 2017) (finding "age was a necessary but insufficient" factor to support ADEA violation where the employer faced an emergency cash shortage and terminated all age 65 and older employees who were covered by both Medicare and an Aetna supplemental health insurance); *Northwest Airlines, Inc. v. Phillips*, 675 F.3d 1126, 1133 (8th Cir. 2012) (holding that pension plan design to "target" a benefit to less senior (and younger) employees who had not already accrued benefits under a different frozen pension plan did not violate ADEA because the "offset" was based not on age, but "on *pension status*"); *see also Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 143, 148 (2008) ("age and pension status remain analytically distinct concepts" even "where pension status is

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

1  itself based on age"). And, tellingly, Plaintiffs have not cited a single case that holds

2  otherwise, in any context.[8]

3      That these changes were lawful is further demonstrated by the EEOC regulation

4  exempting altogether from the ADEA the elimination or alteration of retiree health

5  benefits based on a retired participant's Medicare-eligible status. 29 C.F.R. § 1625.32(b);

6  Mot. at 24-25. Plaintiffs attempt to distinguish the EEOC regulation by stating that it only

7  applies to "former employees." Opp. at 25. But that is not true. Nowhere in the

8  regulation does it mention the word former employees; instead, it applies to "retired

9  participants." 29 C.F.R. § 1625.32(b). It thus is directly on point here.

10      Consistent with the case law and EEOC regulation, the Plan made changes here to

11  certain benefit entitlements based on the retirement and pension status of the participants.

12  The only argument made as to why retirement and pension status were "proxies" for age is

13  that the changes to the retiree benefits resulted in the "*en masse* elimination" of older

14  participants from the Plan. Opp. at 24. But the mere fact that the changes affected mainly

15  older participants does not suggest that pension and retirement status were proxies for age.

16  To begin with, the participants who lost Plan coverage that was secondary to Medicare

17  were, by necessity, retirees over 65 years old. The Plan was never under any legal

18  obligation to provide this form of coverage in the first place to these retired participants,

19  and thus could not be breaching any laws by eliminating it in favor of the Via Benefits

20  program. *See Harris*, 902 F.3d at 1070, 1075 (in context of eliminating retiree health

21  benefits, it is *not* age discrimination to treat retirees less favorably than active

22  employees even where "the average older age of retirees is taken into account in

23  ───────────────

24  [8] *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) (cited at Opp. at 24) is not to the
contrary. There the Supreme Court addressed a situation where a 62-year-old

25  employee with more than nine years of service claimed he was fired to avoid the
payment of pension benefits that would have vested with 10 years of service. *Id.* at

26  606-08. The Court rejected a challenge based on the ADEA, noting that a younger
employee could have more years of service than an older employee and that "an

27  employee's age is analytically distinct from his years of service." *Id.* at 611. Thus,
without evidence of an intent to use pension status as a proxy for age, a termination

28  based on pension status was not considered a dismissal "because of age." *Id.* at 611-12.

- 15 -

deciding on policy affecting retirees"). With respect to the other impacted participants—pensioners who had been receiving primary coverage—the Plan leveraged the availability of Medicare by requiring these participants to rely on Medicare as their primary coverage, unless they have sufficient sessional earnings to qualify for active coverage. Mot. at 5-6. The requirement to rely exclusively on sessional earnings is driven by pension status, not age: 70-year-old non-pensioners may still use residual earnings to qualify for active coverage (so long as they have $1 in sessional earnings, which was the same rule in place prior to the 2020 Plan Amendments). Mot. at 23-24.[9]

Plaintiffs' alternative contention, that the pensioners are not in fact retired because they continue to receive residual income, fares no better. Opp. at 24-25. The residual income continues in perpetuity (though at the lower contribution rate of the older collective bargaining agreements from when the work was performed), including in some cases after an employee's death. It would be absurd to draw the conclusion that employees never retire, and cannot have their benefits modified when they become eligible for Medicare under the EEOC regulation, simply because they continue to receive residual income. *See* 42 C.F.R. § 411.104(f) (under Medicare-secondary payer regulations, an individual "is not considered an employee solely on the basis of receiving delayed compensation payments for previous periods of work").

Likewise, Plaintiffs' continued and repeated assertion that retirees generate contributions to the Plan through their residuals (Opp. at 1, 8-9, 24-25) has no legal relevance. It is well-established that an employee has no legal right to benefits just because an employer contributes to a plan based on an employee's earnings. Mot. at 18-19 (citing, *inter alia*, *Walsh v. Schlecht*, 429 U.S. 401, 410-11 (1977) and *Phillips v.*

---

[9] To the extent Plaintiffs claim that a 60-year-old pensioner who does not qualify for Medicare (and who can use residuals to qualify for active coverage) is being treated differently from a 70-year-old pensioner who does qualify for Medicare (and cannot use residuals to qualify) (Opp. at 8), such a distinction is explicitly exempted from the ADEA by the EEOC regulation permitting coordination with Medicare for retired participants. 29 C.F.R. § 1625.32(b).

- 16 -

*Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 512, 517 (9th Cir. 1991)). Plaintiffs' only means of distinguishing *Walsh* and *Phillips* is by pointing to the fact that these cases involve claims under the Labor Management Relations Act ("LMRA") and that *Phillips* did not involve health benefits.  Opp. at 25.[10]  These are distinctions without a difference.  Plaintiffs cite to nothing in ERISA, or any other law, which creates any additional legal rights to benefits arising from an employer's contribution to a plan such as this one—because there is none.  Indeed, for this Plan, contributions are based on earnings of all covered performers at all ages working under SAG-AFTRA collective bargaining agreements, and many of those performers never become entitled to benefits because they do not earn enough to satisfy the eligibility requirements. Finally, the fact that *Phillips* involved a defined benefit pension plan rather than a health plan (Opp. at 25) only further weakens Plaintiffs' argument since, unlike pension benefits, health benefits *never* vest under ERISA and there are no prescribed eligibility standards.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM IN COUNT II REGARDING THE FAILURE TO DISCLOSE INFORMATION TO AID IN COLLECTIVE BARGAINING NEGOTIATIONS

Nothing in Plaintiffs' opposition brief alters the fact that their failure-to-disclose claim is linked directly to and is inextricably intertwined with the collective bargaining process.  Indeed, the only adverse outcome alleged is the inability of the Union to obtain greater employer contributions in the collective bargaining agreements.  As such, the claim is not properly asserted as a fiduciary breach under ERISA. Regardless, Plaintiffs have also failed to provide any basis for finding the claim to be plausible.

---

[10] Plaintiffs do not even attempt to distinguish the third case Defendants cite for this point, *Hughes*, which explained that "no plan member has a claim to any particular asset that composes a part of the plan's general asset pool."  525 U.S. at 440-41.

- 17 -

### A.   Collective Bargaining Is Not a Fiduciary Function

Plaintiffs do not dispute that it is black-letter law that when trustees who also hold positions with union or management engage in collective bargaining, they are not engaged in an act of plan management or administration and thus not performing a fiduciary function.  Mot. at 15-16; Opp. at 17-20.  Nor do they dispute that the alleged failure to disclose information about the financial condition of the Plan took place here while the SAG-AFTRA Trustees were engaged in collective bargaining.  *See, e.g.*, FAC ¶ 173 (alleging a failure to disclose "in connection with the negotiation and approvals of the collective bargaining agreements").  In fact, their opposition brief is replete with admissions that the alleged non-disclosures were part of the collective bargaining process.[11]

Moreover, Plaintiffs' opposition brief pointedly does not accuse any of the *Management Trustees* of a failure to disclose information about the Plan's financial condition—an obvious indication that the alleged non-disclosures took place in the context of collective bargaining wherein the Management Trustees were sitting on the opposite side of the negotiating table from the Union Trustees.  *See Hall v. Hill Refrigeration, Inc.*, 36 F. Supp. 2d 1185, 1189 (C.D. Cal. 1999) (noting that "in the realm of collective bargaining, representatives negotiate on behalf of one side or the other").  This is precisely why ERISA fiduciary duties do not apply in this context, as

---

[11] For example, they assert that Union Trustees breached their fiduciary duty by: failing to disclose the Plan's financial condition to "members of the negotiating committees" who were not Trustees "in connection with the Union's collective bargaining process" (Opp. at 2, 6); approving inadequate funding terms "while acting as primary representatives of the Union in the Union's collective bargaining and approval process" (*id.* at 17); "undert[aking] primary roles for the Union" in the "collective bargaining process" and approving the Union's "bargaining proposal" and ultimately "bargained terms" (*id.* at 19); withholding "material information to other members of the [Union's] National Board" (*id.*); withholding information that was vital to those "making decisions in collective bargaining" (*id.*); and, by not disclosing this information, impairing the ability of the non-Trustee members "to negotiate the contract on an informed basis" (*id.* at 2).

- 18 -

they are "antithetical to the necessary negotiation and compromise of collective bargaining." *Id.* (citing *NLRB v. Amax Coal Co.*, 453 U.S. 322, 336-37 (1981)).

Plaintiffs do not cite a single case sustaining a fiduciary breach claim for failure to disclose information that allegedly occurred during and would have aided in the collective bargaining process. Instead, they rely on a series of cases that stand for the unrelated proposition that a fiduciary has a duty to disclose information to participants while engaged in acts of plan administration, such as in enabling participants to understand their benefits or to make informed decisions regarding their choice of benefits. For example, in the primary case on which Plaintiffs rely, *Farr v. U.S. West Communications, Inc.*, 151 F.3d 908 (9th Cir. 1998), the employer deliberately omitted information concerning possible adverse tax consequences of the pension plan's early retirement program when informing employees about their benefits. *Id.* at 914. Unlike here, the failure to disclose this information occurred while the plan sponsor was engaged in the fiduciary function of plan administration. *Cf. Varity Corp.*, 516 U.S. at 501-05 (holding that an employer speaks "in its capacity as plan administrator" when it offers "beneficiaries detailed plan information in order to help them decide whether to remain with the plan" and distinguishing between statements made within the "scope of plan administration" and settlor/non-fiduciary activities).

The other cases cited by Plaintiffs (Opp. at 17-20) similarly attribute fiduciary obligations only to disclosures associated with plan administration. *See Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1301 (3d Cir. 1993) (non-disclosure of availability of continued health coverage during the plaintiff's conversations with fund personnel, including its administrator, about their benefits); *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1400 (9th Cir. 1995) (false assurances to individual participants that "their benefits were secure and available upon retirement" when individual accounts had not been established for each participant); *cf. Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1053 (9th Cir. 2000) (noting that the act of

- 19 -

"considering the amendment of[] a plan is . . . not an act of plan management or administration" and finding no affirmative duty to volunteer information concerning anticipated plan amendments involving a lump-sum retirement incentive unless the participant has "specifically alerted the fiduciary . . . that such information is material" to their making of an "informed choice" about their benefits) (citing *Varity Corp.*, 516 U.S. at 502, 505); *Acosta v. Pac. Enters.*, 950 F.2d 611, 617-19 (9th Cir. 1991) (finding no affirmative duty to disclose information that was "not sufficiently related" to the fiduciary's core ERISA § 404(a), 29 U.S.C. § 1104(a) duties of "providing benefits" and "defraying reasonable expenses of administering the plan").  At bottom, none of the cases cited by Plaintiffs supports the imposition of fiduciary liability under the circumstances presented here, where the non-disclosure claims are directed at the non-fiduciary conduct of collective bargaining negotiations.

**B.   Plaintiffs Fail to Show Their Failure-to-Disclose Claim Is Plausible**

With respect to the plausibility of their nondisclosure claim, Plaintiffs contend that "had the [negotiating] committees known, different actions would have been taken to prioritize funding."  Opp. at 21.  But Plaintiffs provide no factual support at all (no citations to the complaint or otherwise) for this assertion.  Nor do they make any effort to refute the two principal reasons for finding their nondisclosure claim implausible: First, since Trustees who possessed information about the Plan's financial conditions were the "lead" Union negotiators (FAC ¶ 102), it is not reasonable to infer that a lack of awareness of this information resulted in the failure to obtain more favorable terms above and beyond a negotiated "up to $54 million" contribution increase.  Mot. at 18. Second, where collective bargaining occurs for 160,000 Union members, and only a fraction of those members are Plan participants, it is unreasonable to believe that awareness of the Plan's financial condition would have resulted in a majority of

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**

members voting to divert their wage gains to the minority of members that benefit from increased Plan contributions.  *Id*.[12]

In short, Plaintiffs' non-disclosure claim is premised on nothing more than pure conjecture untethered to factual reality.  Such speculation does not give rise to a plausible claim.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (to be plausible, complaint must state sufficient facts "to raise a right to relief above the speculative level"); *cf. Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 711 (2d Cir. 2010) (affirming grant of motion to dismiss for lack of plausibility duty of fair representation allegation that, absent misrepresentation, the members "might have lobbied hard[er] to prevent termination" of a pension plan).[13]

---

[12] Plaintiffs inaccurately assert that "by attributing the Benefit Cuts to the failure of the Union to have obtained sufficient funding in collective bargaining," the "Trustees conceded" that the alleged nondisclosures resulted in the Plan failing to obtain additional contributions.  Opp. at 7; Mot. at 2.  The purported support for this assertion is a *Deadline* article which states that some Trustees "told members employer contributions under the Union collective bargaining agreements had not kept up with the cost of health coverage."  FAC ¶ 108.  This quotation did not attribute the benefit changes to any failure by the Union to obtain greater contributions in bargaining.  It simply purported to state the fact that the cost of health coverage outpaced any achievable contribution increases.

[13] The two cases from out-of-circuit district courts that Plaintiffs purport to rely on (Opp. at 21) are unpersuasive and irrelevant because they do not remotely resemble the factual situation here and accordingly do not in any way support the proposition that the negotiating committee would have taken different action if it possessed the information about the finances of the Plan that was already known by the lead negotiators.  *See Pizzella v. Vinoskey*, 409 F. Supp. 3d 473, 484, 525 (W.D. Va. 2019) (court would not presume that CEO would not have sold shares at lower price in context of proving loss to the plan where trustee of Employee Stock Ownership Plan purchased the shares of the CEO for a significantly inflated price without investigating the proper share price); *Murphy v. FedEx, Nat'l LTL, Inc.*, 582 F. Supp. 2d 1172, 1182 (E.D. Mo. 2008) (court estopped employer from denying that it approved plaintiff's Family and Medical Leave where it led her to believe that it had granted her request and court would never know what information plaintiff would have provided had it not caused her to so believe).

1

## **CONCLUSION**

2      For the reasons stated above and in Defendants' moving brief, the Complaint

3 should be dismissed with prejudice.

4

5 Dated: June 22, 2021          By:    /s/ Myron D. Rumeld

6                                      Myron D. Rumeld*
                                       mrumeld@proskauer.com
7                                      Neil V. Shah*
                                       nshah@proskauer.com
8                                      Anastasia S. Gellman*
                                       agellman@proskauer.com
9                                      PROSKAUER ROSE LLP
                                       Eleven Times Square
10                                     New York, NY 10036
                                       Tel.: 212.969.3000
11                                     Fax: 212.969.2900

12                                     Scott P. Cooper (SBN 96905)
                                       scooper@proskauer.com
13                                     Jennifer L. Jones (SBN 284624)
                                       jljones@proskauer.com
14                                     PROSKAUER ROSE LLP
                                       2029 Century Park East, Suite 2400
15                                     Los Angeles, California 90067
                                       Tel.: 310.557.2900
16                                     Fax: 310.557.2193

17                                     Jani K. Rachelson*
                                       jrachelson@cwsny.com
18                                     Evan R. Hudson-Plush*
                                       ehudson-plush@cwsny.com
19                                     COHEN, WEISS AND SIMON LLP
                                       900 Third Avenue, Suite 2100
20                                     New York, NY 10022-4869
                                       Tel.: 212.563.4100
21                                     Fax: 646.473.8254

22                                     * admitted pro hac vice

23                                     Attorneys for Defendants

24

25

26

27

28

- 22 -

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (2:20-cv-10914-CAS-JEM)**