Scott P. Cooper (SBN 96905)
scooper @proskauer.com
Jennifer L. Roche (SBN 254538)
jroche@proskauer.com
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Tel.: 310.557.2900
Fax: 310.557.2193

Myron D. Rumeld*
mrumeld@proskauer.com
Neil V. Shah*
nshah@proskauer.com
Anastasia S. Gellman*
agellman@proskauer.com
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel.: 212.969.3000
Fax: 212.969.2900

Jani K. Rachelson*
jrachelson@cwsny.com
Evan R. Hudson-Plush*
ehudson-plush@cwsny.com
COHEN WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, NY 10022-4869
Tel.: 212.563.4100
Fax: 646.473.8254

* admitted pro hac vice

Attorneys for Defendants

Neville L. Johnson (SBN 66329)
njohnson@jjllplaw.com
Douglas L. Johnson (SBN 209216)
djohnson@jjllplaw.com
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Tel.: 310-975-1080
Fax: 310-975-1095

Steven. A Schwartz*
steveschwartz@chimicles.com
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
361 West Lancaster Avenue
Haverford, PA 19041
Tel.: 610-642-8500
Fax: 610-649-3633

Robert J. Kriner, Jr.*
rjk@chimicles.com
Emily L. Skaug*
els@chimicles.com
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
2711 Centerville Road, Suite 201
Wilmington, DE 19808
Tel.: 302-656-2500
Fax: 302-656-9053

* admitted pro hac vice

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EDWARD ASNER, *et al.*,<br><br>        Plaintiffs,<br><br>   vs.<br><br>THE SAG-AFTRA HEALTH FUND, *et al.*,<br><br>        Defendants. | Case No. 2:20-cv-10914-CAS (JEM)<br><br>[DISCOVERY MATTER:  Referred to Magistrate Judge John E. McDermott]<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Action Filed: December 1, 2020 |

**1.   PURPOSES AND LIMITATIONS**

    1.1.    This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules. Nothing in this order is intended to alter or affect any Party's rights or obligations under any order by the assigned District Judge, but shall be construed instead, wherever possible, as consistent with any order by the assigned District Judge. Accordingly, the Parties (as defined below), through their undersigned counsel, hereby agree and stipulate to the following protocol (the "Protocol") for the production of discovery materials and request that their stipulation be so ordered by the Court.

**2.   COOPERATION**

    2.1    The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Federal Rules of Civil Procedure and the Local Rules of this Court. Consistent with their obligations under L.R. 37-1, the Parties will first attempt to resolve, in person, by video conference, or by telephone, disputes regarding discovery issues before filing a motion with the Court, or otherwise seeking relief.

**3.   DEFINITIONS**

    3.1    <u>Action</u>:  The above-captioned action in the United States District Court for the Central District of California:  *Asner, et al. v. The SAG-AFTRA Health Fund, et al.*, Case No. 2:20-cv-10914-CAS (JEMx).

    3.2    <u>Document</u>:  Defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 26 and 34(a)(1)(A).

3.3   <u>Email</u>:  Electronic messages sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, or Lotus Notes.

3.4   <u>ESI</u>:  An abbreviation of "electronically stored information" and defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 26 and 34(a)(1)(A).

3.5   <u>Extracted Text</u>:  Text extracted from a Native Format file and includes at least all header, footer, document body information, and any hidden text, if available.

3.6   <u>Family</u>:  Defined as all parts of a group of documents that are connected to each other for purposes of communication, e.g., an email (parent) and its attachments (children).  For avoidance of doubt, the term Family does not include separate entries in calendars, diaries, file folders, notebooks, or binders, the responsiveness of which will be determined independently on an entry-by-entry basis.

3.7   <u>Instant Messages</u>:  Real time communications sent via chat client or SMS, including but not limited to Symphony, Bloomberg Chat, Google Talk, WhatsApp, Yahoo! Messenger, AOL Instant Messenger (AIM), Blackberry Messenger, ICQ, Pidgin, Audium, Trillian, Apple iMessage, Skype, Microsoft Teams, Signal, Facebook Messenger, Telegram, Snapchat, Mattermost, Dust, Viber, Threema, Silence, Wire, Wickr, Line, Voxer, Smiley Private Texting, CoverMe, Slack, Zoom, or any proprietary text, chat, or instant messaging system.

3.8   <u>Load File</u>:  An electronic file that is used to import all required production information into a document database, including, if available, document images, Extracted Text or OCR text, Native Format files where required by this Protocol, and Metadata, as well as information indicating document

- 2 -

breaks, and document relationships such as those between an Email or Instant Message and its attachments and a document and information related to embedded content.

3.9   <u>Metadata</u>:   Structured information about ESI that is: (i) information embedded in or associated with a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing Documents for production; and/or (iv) information collected during the course of collecting Documents, such as the name of the media device, or the custodian or non-custodial data source from which it was collected.

3.10   <u>Native Format</u>:   The format of ESI in the application in which such ESI was originally created, viewed and/or modified.

3.11   <u>OCR</u>:   The "optical character recognition" technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format.   The latter text is also referred to as the "OCR text" or simply "OCR."

3.12   <u>Parties</u>:   Plaintiffs Edward Asner, Michael Bell, Raymond Harry Johnson, Sondra James Weil, David Jolliffe, Robert Clotworthy, Thomas Cook, Audrey Loggia, Deborah White, and Donna Lynn Leavy; and Defendants the SAG-AFTRA Health Fund, the Board of Trustees of the Screen Actors Guild-Producers Health Plan, the Board of Trustees of the SAG-AFTRA Health Fund, Daryl Anderson, Helayne Antler, Amy Aquino, Timothy

- 3 -

Blake, Jim Bracchitta, John Carter Brown, Duncan Crabtree-Ireland, Barry Gordon, J. Keith Gorham, James Harrington, David Hartley-Margolin, Harry Isaacs, Robert W. Johnson, Sheldon Kasdan, Matthew Kimbrough, Lynne Lambert, Allan Linderman, Carol A. Lombardini, Stacy K. Marcus, Richard Masur, John T. McGuire, Diane P. Mirowski, Paul Muratore, Tracy Owen, Michael Pniewski, Ray Rodriguez, Marc Sandman, Shelby Scott, Sally Stevens, Gabriela Teissier, Lara Unger, Ned Vaughn, David Weissman, Russell Wetanson, David P. White, and Samuel P. Wolfson.  "Party" shall refer to any party to the Action.

3.13  Producing Party:  Any Party in the Action that produces Documents.

3.14  Protective Order:  The Stipulated Protective Order filed in the Action and entered by the Court on February 15, 2022 (ECF No. 76).

3.15  Receiving Party:  Any Party in the Action to whom Documents are produced.

3.16  Responsive Document:  Any Document that is responsive to any discovery request served on the Producing Party in the litigation and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure or Court order.

3.17  Tagged Image File Format:  Or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

## 4.  TIMEFRAME AND IDENTIFICATION OF CUSTODIANS

4.1  Initial ESI Conference: The Parties agree to meet and confer within a reasonable period of time, and shall cover the following topics: (i) the identification (by category or type) of custodial and non-custodial data sources containing potentially relevant ESI for potential collection, review, and production; (ii) the identity and role of custodians from which the

- 4 -

Producing Party plans to collect Documents, including names, relevant titles, and a good faith explanation describing how each custodian was determined; (iii) additional parameters for scoping the review and production efforts (e.g., application of date ranges that will be used for production); (iv) the potential use and identification of search terms, tools, or techniques for the collection of ESI; (v) the identification and production of Responsive Documents from custodial and non-custodial sources that do not require the use of search terms, tools, or techniques for collection; (vi) applicable timeframe(s) for collection and review of Documents; and (vii) the method the Producing Party proposes to use for de-duplication of ESI, including any exceptions to such de-duplication.

4.2    <u>Custodians</u>: Following the above meet and confer described in Section 4.1, the custodian list will be finalized, subject to Section 4.4 below, by agreement of the Parties within a reasonable time, which will be subject to the Producing Party's ongoing good faith efforts to identify the custodians most likely to have responsive or relevant information.  Any outstanding disagreements between the Parties may be submitted to the Court for resolution after the Parties engage in good faith negotiations regarding any disputes.  For each custodian, the Producing Party shall make reasonable efforts to identify the locations where non-duplicative, potentially relevant Documents reside.  For targeted collections conducted pursuant to this Protocol, Documents may be collected from all data sources within the possession, custody, and control of the custodian, but only to the extent interviews with the custodian indicate that such data sources: (i) may contain relevant information relating to the former Screen Actors Guild-Producers Health Plan or the SAG-AFTRA Health Plan; and (ii) are reasonably accessible within the meaning of Federal Rule of Civil Procedure 26.

**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION (Case No. 2:20-cv-10914-CAS (JEM))**

Subject to the Parties' objections and responses to Requests for Production of Documents, and subject to the Parties' Protective Order (ECF No. 76), the Parties shall begin producing non-privileged Responsive Documents on a rolling basis, from the files of the identified custodians. The Parties agree to work together in good faith to prioritize and sequence the custodial productions of deponents, such that these Responsive Documents are produced with sufficient time to review prior to their depositions. The Parties agree to take any unresolved disputes on same promptly to the Court or its designee.

4.3   <u>Non-Custodial Sources</u>: Following the above meet and confer described in Section 4.1, and the exchange of any necessary additional information relating to any identified non-custodial source, the Parties will agree upon an initial list of non-custodial sources (by category or type) (or present any disputes to the Court or its designee), that will be searched to identify potentially responsive or relevant Documents. Subject to the Parties' objections and responses to requests for production of Documents, and subject to the Parties' Protective Order, the Parties shall begin producing non-privileged Responsive Documents on a rolling basis, from the identified non-custodial sources.

4.4   <u>Obligation and Supplementation</u>: The Producing Party has a continuing obligation to identify (by category or type) any custodial and non-custodial data sources containing potentially responsive information that it is neither searching nor producing, and preserve them. The Receiving Party reserves the right to request, at any time prior to the close of discovery, the inclusion of additional custodial or non-custodial data sources for good cause shown. The Producing Party reserves the right to object to any such additions. Any

disputes remaining after good faith discussions will be resolved by the Court.

4.5    The Parties shall use best efforts to collect ESI in a forensically sound manner that does not alter metadata or other file attributes.

## 5.    SEARCH TERMS

5.1    In accordance with Section 4.1 above, the Parties agree to meet and confer to reach an agreement on search terms.  A Producing Party who intends to use search terms will describe a search protocol that will include: (a) the universe of documents to which search terms will be applied (e.g., custodial sources, non-custodial sources, and proposed date ranges applicable to each source), and (b) proposed search terms to be applied to that universe of documents, subject to revision based on, for example, meet and confer of the Parties and the number of hits returned by each term. A Requesting Party may also suggest search terms to be applied. Before finalizing any search protocol, the Producing Party shall provide reasonable metrics requested by the Receiving Party regarding any proposed search term.  The Parties agree to meet and confer to the extent there is disagreement on the inclusion of a search term or the effectiveness of the search term protocol.

5.2    The Parties will promptly meet and confer in good faith regarding any disagreements over search terms.  Where a Party objects to using certain search terms, the objecting Party will provide information regarding why the search terms are overbroad or should not be used sufficient to allow the Receiving Party to assess the reasonableness of the terms, and where good cause is shown, the Producing Party shall provide the number of hits for the disputed search term(s).  If the Parties are unable to reach an agreement on search terms within a reasonable amount of time, they will engage in good faith discussions to extend any production deadline as appropriate in order to

- 7 -

allow the Producing Party adequate time to conduct the review and production.

5.3     After initial agreement is reached regarding search terms, the Parties reserve the right to request, at any time prior to the close of discovery, inclusion of additional search terms for good cause shown, or exclusion of terms initially agreed to that prove to be overbroad and capturing predominantly irrelevant data.  The Parties reserve the right to object to such requests but will engage in good faith negotiations.  Any disputes shall be submitted to the Court after good faith negotiations.

5.4     If a Party discovers a document that is responsive to the discovery requests and the Party has asserted no objections that apply to prevent the production of that document, the Party may not withhold the document on the basis that it was not discovered or identified through the agreed-upon search methodology.

5.5     Additional Requests for Documents: Nothing in this Protocol shall preclude a Party from serving additional Requests for Production at any time prior to the close of fact discovery. Nothing in this Protocol shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements).

5.6     Technology Assisted Review: Nothing in this Protocol prohibits a Producing Party from using Technology Assisted Review ("TAR") during review to identify documents for production.  Prior to using TAR, the Parties agree to meet and confer regarding the use of TAR, including a TAR protocol, and submit any unresolved disputes to the Court or its designee for resolution.

**6.    PRODUCTION FORMAT**

6.1    <u>Format Guidelines</u>:    The Parties shall, to the extent reasonably and technically possible, produce paper Documents and ESI according to the specifications provided in Exhibit A.

6.2    <u>De-Duplication and Culling</u>:   A Party is only required to produce a single copy of a responsive Document.  Each Party may remove exact duplicate Documents (i.e., identical copies of the same Document), including but not limited to Email, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents.  If a Party chooses to remove exact duplicate documents, the Party will only remove exact duplicate ESI using the MD5/SHA-1 hashing method and shall identify the custodians of de-duplicated Documents, except in the case of the removal of subordinate duplicative email threads as provided for in 6.13 below.  Moreover, (a) de-duplication shall be performed only at the Document family level so that attachments are not de-duplicated against identical stand-alone versions of such Documents and vice versa, although each family member shall be hashed separately for purposes of populating the "HashValue" field in Exhibit A; (b) attachments to Emails, Instant Messages or other Documents shall not be disassociated from the parent Email, Instant Message or Document even if they are exact duplicates of another Document in the production, and (c) paper Documents shall not be eliminated as duplicates of responsive ESI.  ESI that is not an exact duplicate according to the method specified in Exhibit A may not be removed.  The Producing Party may employ reasonable culling methods to reduce large volumes of presumptively non-responsive ESI, e.g., unresponsive mass emails/listservs, without individually reviewing such ESI.

**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION (Case No. 2:20-cv-10914-CAS (JEM))**

6.3 <u>Encryption</u>: The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Protocol, and if produced in Native Format, the decrypted Document is produced. To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this Protocol, the Parties have no duty to identify the prior encrypted status of such Documents. To the extent such Documents are not successfully processed despite use of reasonable efforts, including reasonable efforts to obtain passwords, a placeholder TIFF image may be produced in place of each such Document indicating that security protection could not be removed to the extent the document would be included in a production based on familial relationship. Upon request from the Receiving Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

6.4 <u>Documents to Be Produced Natively</u>: Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database files, video, audio files, animation files, .CSV files, and Power Point and other presentation files, and other file types that cannot be accurately represented in TIFF format shall be produced in Native Format, if available. If a Document to be produced in Native Format contains privileged information, the Document will be produced by producing the Document in TIFF format with redactions, to the extent reasonably and technically possible. To the extent Documents that fall under this Section contain privileged information and cannot be redacted or produced in TIFF format, such Documents will be logged on a privilege log. The production load files shall contain a link to the produced Native Format files as

- 10 -

specified in the "Native Link" Metadata field described in Exhibit A. Each electronic file produced in Native Format shall be assigned a unique Document Number, as set forth in Exhibit A, and the database record for that file shall include a single page TIFF image branded with this unique Document Number in the lower right corner of the image as a Bates number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page. To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Protective Order must appear on the associated TIFF placeholder in no less than 10-point font. Files produced in Native Format shall be given file names identical to the Document Number, followed by the file extension and include the confidentiality designation after the file number. For each file produced in Native Format, Producing Party shall also indicate its native status in the Native File Metadata field described in Exhibit A.

6.5   <u>Embedded Files</u>:   Embedded files to responsive documents containing substantive information shall be produced as separate documents. The Document Number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Exhibit A. Upon request by the Producing Party, the Parties shall meet and confer in good faith regarding whether certain non-substantive embedded files may be excluded from production.

6.6   <u>Production of Additional Documents in Native Format</u>: Each Party reserves the right to request production of ESI in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A, and, upon a showing of reasonable need, such requests will not be unreasonably denied. If the Parties are unable to agree as to the production

of the requested Documents in Native Format, the Parties may submit the matter to the Court.

6.7 <u>Attachments</u>:   The Parties agree that any Document or attachments that contain information subject to privilege, immunity or privacy laws,   or containing solely irrelevant and/or non-responsive information may be withheld, and produced with a placeholder indicating the reason for the withholding, provided that such Documents or attachments shall be produced where possible with redactions sufficient to remove the portions of the Document or attachments that contain information subject to privilege, immunity or privacy laws.

6.8 <u>Unitization</u>:   In scanning paper Documents, each page of paper should be output to a single page TIFF file.  Distinct, logical document breaks should be defined as such in a standard load file as described in Exhibit A.  In the case of an organized compilation of separate Documents (e.g., a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any document or family relationship among the scanned Documents in the compilation should be reflected in the data load file at the appropriate standard fields. Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document.  The Parties shall make reasonable efforts to unitize the Documents correctly.

6.9 <u>Document Numbers and Confidentiality Designations for TIFF Images</u>: Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") containing at least seven (7) digits electronically "burned" onto the image in no less than 10-point font.   Unless it would obscure, conceal or interfere with any

- 12 -

information originally appearing on the Document, the Document Number shall be burned on the lower right-hand corner of the Document. Unless it would obscure, conceal or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to the Protective Order filed with the Court will appear on the lower left-hand side of each page of a Document produced, in no less than 10-point font. The Document Number for each Document shall be created so as to identify the Producing Party and the Document Number. There should not be an underscore or dash between the prefix and the Document Number. Each Party's document numbering scheme shall use the unique identifying name agreed upon by the Parties.

6.10    Metadata Fields and Processing: Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Exhibit A if such fields cannot be extracted from a Document and its context in the source data, with the exception of the following, if available: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Redacted (Y/N), (g) Confidentiality, and (h) Hash Value. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist or is not reasonably or technically accessible.

6.11    Production Media: The Producing Party shall produce Document images, Native Format files, load files and Metadata on hard drives, CDs, DVDs,

- 13 -

flash drives, secure FTP, or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media and the Document Number ranges of the Documents in that production. Production Media shall include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross reference the Document Number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production. Productions should be accompanied by a cover letter identifying the custodians whose files are present in the production, if applicable, or otherwise describing the source(s) of the documents present in the production, or a load file with substantially the same information.

6.12   <u>Color Copies</u>: With respect to Documents or groups of Documents that are in color but not produced in native format, the Producing Party shall exercise good faith in determining whether or not to produce such documents in color or provide the Receiving Party which of which documents or groups of documents are not being produced in color and the reasons why.

6.13   <u>Threading</u>: In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression." As used herein, email thread suppression means reducing duplicative production of Email threads by producing the most recent Email containing the thread of Emails, as well as all attachments within the thread, and excluding Emails constituting exact duplicates of Emails within the produced string. For

purposes of this paragraph, only Email messages in which the parent document, senders and recipients, and all attachments are exactly the same will be considered duplicates.  In the event an Email thread is withheld on privilege grounds, all members of the thread must be reviewed independently for privilege as applicable.

**7.   PROCESSING SPECIFICATIONS**

7.1   Format Guidelines:  The Producing Party will generate and preserve the MD5 or SHA-1 hash values of all ESI based on the Native Format file.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:  Where Documents are not otherwise produced natively, all TIFF images shall display tracked changes, comments and other rich data as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible. Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties' productions and shall make reasonable efforts for that time zone to be Pacific Standard Time (PST).  The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

**8.   AMENDMENT TO PROTOCOL**

8.1   This Protocol may be modified by written stipulation of the Parties, or by the Court, for good cause shown.

**9.   DOCUMENTS PROTECTED FROM DISCOVERY**

9.1   Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other

- 15 -

federal or state proceeding. Nothing contained herein, however, is intended to limit a party's right to conduct a review of ESI for relevance, responsiveness and/or privilege or other protection from discovery.

9.2     Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate. As an alternative, a privilege log may be generated with the following details:

    a. Date;

    b. File Type;

    c. Author(s);

    d. Recipient(s), cc(s) and bcc(s) (where known);

    e. The type or nature of the privilege or immunity asserted; and

    f. A file name, subject line or other brief description of the subject matter of the document to enable the other party's evaluation of the claim and basis for the privilege or immunity.

Following receipt of the log, upon good cause, a Party may seek a supplemental description on a case-by-case basis for any document for which it believes the log does not provide sufficient context to enable it to evaluate the privilege claim. The Party that produced the log will evaluate such requests on a good faith basis and produce a supplemental log for the select entries, where applicable, within fifteen (15) business days.

9.3     A document containing privileged content or work product need not be redacted and produced if the content of the document that would otherwise be produced following the privilege redaction is non-responsive. Documents redacted for privilege need not be logged on a privilege log as long as (a) for Emails, the bibliographic information (*i.e.*, to, from, cc recipients, date and

- 16 -

time) is not redacted, and the reason for the redaction is noted on the face of the document; and (b) for non-Email documents, the reason for the redaction is clearly noted on the face of the document.  After receipt of the production, on a case-by-case basis, a Party may request in good faith that a privilege log entry be created for a redacted document only if the basis for privilege cannot reasonably be ascertained on the face of the produced document.  Upon receipt of such a request, the Parties agree to meet and confer, if necessary, on the need for such a log entry.  If the Parties cannot agree on the need for a privilege log entry, any Party may seek the assistance of the Court.

## 10.  **MISCELLANEOUS**

10.1  <u>Liaison:</u> Each Party will designate one or more individuals who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes. The liaison is not necessarily the person who would be designated to testify related to the Party's preservation efforts, Document retention policies, collection efforts or other related matters.

10.2  <u>Right to Assert Other Objections/Authenticity</u>: This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Protocol shall be construed to affect the admissibility of any Document. All objections to the admissibility of any Document, except as to the authenticity of the Documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

- 17 -

**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION (Case No. 2:20-cv-10914-CAS (JEM))**

10.3   <u>Preservation</u>: Nothing in this Protocol alters a Party's legal obligation to retain Documents. The Parties have discussed and understand their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate, and state as follows: (i) the Parties have discussed the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved. The Parties shall add or remove custodians as reasonably necessary; and (ii) the Parties represent that they have exercised reasonable diligence to take steps to preserve reasonably accessible ESI relating to the issues relevant to this Action and distribute document retention notices to custodians who are likely to have relevant documents.

10.4   <u>Protected Documents</u>: All Documents produced by the Parties will be subject to the terms of the Protective Order entered in this Action.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

DATED: May 12, 2022

By:  /s/ Myron D. Rumeld

Myron D. Rumeld*
mrumeld@proskauer.com
Neil V. Shah*
nshah@proskauer.com
Anastasia S. Gellman*
agellman@proskauer.com
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel.: 212.969.3000
Fax: 212.969.2900

By:  /s/ Steven A. Schwartz

Steven A. Schwartz*
steveschwartz@chimicles.com
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Tel.: 610.642.8500
Fax: 610.649.3633

- 18 -

Scott P. Cooper (SBN 96905)
scooper@proskauer.com
Jennifer L. Roche (SBN 254538)
jroche@proskauer.com
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Tel.: 310.557.2900
Fax: 310.557.2193

Jani K. Rachelson*
jrachelson@cwsny.com
Evan R. Hudson-Plush*
ehudson-plush@cwsny.com
**COHEN WEISS AND SIMON LLP**
900 Third Avenue, Suite 2100
New York, NY 10022-4869
Tel.: 212.563.4100
Fax: 646.473.8254

* *admitted pro hac vice*

*Attorneys for Defendants*

Neville L. Johnson (SBN 66329)
njohnson@jjllplaw.com
Douglas L. Johnson (SBN 209216)
djohnson@jjllplaw.com
**JOHNSON & JOHNSON LLP**
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Tel.: 310.975.1080
Fax: 310.975.1095

Robert J. Kriner, Jr.*
rjk@chimicles.com
Emily L. Skaug*
els@chimicles.com
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
2711 Centerville Road, Suite 201
Wilmington, DE 19808
Tel.: 302.656.2500
Fax: 302.656.9053

* *admitted pro hac vice*

*Attorneys for Plaintiffs*

**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY
STORED INFORMATION (Case No. 2:20-cv-10914-CAS (JEM))**

**E-FILING ATTESTATION**

I, Myron D. Rumeld, attest pursuant to Local Rule 5-4.3.4(a)(2)(i) that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ Myron D. Rumeld
Myron D. Rumeld

PURSUANT TO THE PARTIES' STIPULATIONS, IT IS SO ORDERED.

DATED: 5/16/22

Honorable John E. McDermott
United States Magistrate Judge

**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION (Case No. 2:20-cv-10914-CAS (JEM))**

# **EXHIBIT A**

## **1. PRODUCTION LOAD FILES**

There will be two Load/Unitization files accompanying all productions of ESI.

- The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension, that contains the agreed upon Metadata fields in UTF 8 encoding.

- The second will be a cross-reference file that contains the corresponding image information [IDX] identifying document breaks.  The acceptable formats for the cross-reference files are .log and .opt.

## **2. IMAGES**

- Produce documents in Single Page Group IV TIFF.

- Image Resolution of at least 300 DPI.

- In addition to the provisions of Section 6.12 of the Protocol, if either Party deems the quality of the document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the document as a JPEG file or as a color image in TIFF or PDF format.

- File Naming Convention:  Match Bates Number of the page.

- Insert placeholder image for files produced in Native Format (see Section 6.4.).

- Original document orientation or corrected orientation shall be retained.

## **3. SPECIAL FILE TYPE INSTRUCTIONS**

- Certain file types shall be produced in Native Format, as specified in Section 6.4.

- If redactions are required, see production requirements specified in Section 6.4.

- 21 -

**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION (Case No. 2:20-cv-10914-CAS (JEM))**

### 4. FULL TEXT EXTRACTION/OCR

- Where available, produce full extracted text for all file types (Redacted text will not be produced).  Redacted documents should be re-OCRed and the re-OCRed text should be produced.
- Produce OCR text output for any paper document.
- Produce OCR text output for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).
- Production format:  Single text file for each document, not one text file per page.
- File Naming Convention:  Match Beg Bates Number.

### 5. ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS

- BegBates:  Beginning Bates Number.
- EndBates:  Ending Bates Number.
- BegAttach:  Beginning Bates number of the first document in a document family range.  Documents that are part of document families, i.e., containing parents and attachments should receive a value.
- EndAttach:  Ending Bates number of the last document in attachment range in a document family range.  Documents that are part of document families, i.e., containing parents or attachments, should receive a value.
- Custodian:  Name of the Custodian of the Document Produced. LastName_FirstName format.
- Duplicate Custodians:  Names of all custodians who had a copy of a document that was removed through the de-duplication process (if applicable). LastName_FirstName format.

- File Name:  Filename of the original source ESI as stored by the custodian.
- Native Link:  Path and filename to produced Native Format file (see Section 6.4.)
- Email Subject:  Subject line extracted from an Email message.
- Title:  Title field extracted from the metadata of a non-Email document.
- Author:  Author field extracted from the metadata of a non-Email document.
- From:  From field extracted from an Email message.
- To:  To or Recipient field extracted from an Email message.
- CC:  CC or Carbon Copy field extracted from an Email message.
- BCC:  BCC or Blind Carbon Copy field extracted from an Email message.
- Date Sent:  Sent date and time of an Email message (mm/dd/yyyy hh:mm:ss format).
- Date Received: Date and time that the Email message was originally received (according to original time zones) (mm/dd/yyyy hh:mm:ss format).
- Date Last Modified:  Last modification date and time (mm/dd/yyyy hh:mm:ss format).
- DATECREATED: mm/dd/yyyy hh:mm:ss format
- ATTACHCOUNT
- ATTACHIDS
- File Extension:  File extension of document (.msg, .doc, .pdf, .xls, etc.).
- FILEPATH
- FILESIZE
- Extracted Text:  File path to Extracted Text/OCR File.
- Confidentiality:  "Confidential," if a document has been so designated under the Protective Order; otherwise, blank.
- Message-ID:  The Outlook Message ID assigned by the Outlook mail server (if applicable).

- 23 -

- • Conversation Index ID: Email thread created by the Email system in the form of a 44-character string of numbers and letters created in the initial Email that receives an additional 10 characters for each reply or forward of an Email.
- • Reference Chain or Discussion Thread:  The Outlook message "Reference Chain" or "Discussion Thread" (if applicable).
- • Embedded Source:  The Document Number of the source file from which the embedded file was extracted (if applicable).
- • Redacted (Y/N)
- • MD5 Hash
- • PGCOUNT
- • PARENTID
- • PARENTDATE: mm/dd/yyyy hh:mm:ss format.
- • LASTMODIFIEDBY
- • TIMEZONE

**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION (Case No. 2:20-cv-10914-CAS (JEM))**